TERRENCE G. MCKENNA *v.* STEVEN WOODS
(8202)

BORDEN, DALY and LAVERY, Js.

Argued February 6—decision released May 15, 1990

*Jackson T. King, Jr.,* with whom, on the brief, was *Jeffrey R. Godley,* for the appellant (defendant).

*Lloyd L. Langhammer,* for the appellee (plaintiff).

BORDEN, J. The plaintiff brought this action for specific performance and damages following the defendant's refusal to convey certain real property. The defendant appeals from the judgment of the trial court

accepting an attorney trial referee's recommendation awarding damages in the amount of $30,500 to the plaintiff. The defendant claims that the court erred (1) in finding that there was an anticipatory breach, (2) in awarding damages even though the plaintiff was not ready, willing and able to perform, and (3) in improperly computing the amount of damages. We find no error.

The referee found the following facts. Pursuant to a written contract dated January 28, 1987, the plaintiff agreed to buy for $154,500, a two-family house under construction by the defendant on a lot in Stonington.[1] The contract called for the plaintiff to pay $15,000 at the date of execution,[2] and to pay the balance at the date of closing. The balance was to consist of a $40,000 cash payment and the proceeds from a $99,500 mortgage. With respect to the contemplated $40,000 payment, the plaintiff intended to pay only $27,725 because of setoffs based on certain contractual payment obligations of the defendant. By the spring of 1987, the plaintiff had accumulated approximately $24,000 in a bank account for the purchase, but never accumulated exactly $27,725. The contract further provided for a closing on or before March 27, 1987, and required the

[1] The parties had previously entered into a contract in November, 1986, wherein the plaintiff sold this lot to the defendant for $15,000, plus other consideration. That contract required the defendant to build and sell a two-family house on the lot. The remaining consideration was to be based on the defendant remitting a portion of the profit, not to exceed $15,000, on the eventual sale of the house. Subsequently, on January 28, 1987, the parties entered into a second contract, which is the subject of this appeal, whereby the defendant would resell the improved parcel to the plaintiff. The referee found that this contract superseded the earlier contract and, accordingly, limited the action for breach to the second contract. The plaintiff does not dispute this finding.

[2] Although the contract called for a $15,000 deposit, no cash was tendered. Instead, the plaintiff was credited with the $15,000 "profit" consideration that the defendant had agreed to pay under their earlier contract. See footnote 1, supra.

house to be completed and a certificate of occupancy to be issued no later than that date. The contract did not specify that time was of the essence.

The referee further found that, because of construction delays, the defendant was unable to complete construction of the house by the closing date of March 27, 1987. The defendant substantially completed construction of the house in July, 1987, but did not receive the certificate of occupancy until October, 1987. On January 28, 1987, the date of execution of the contract, the value of the property was the contract price of $154,500, and in October, 1987, its value was $170,000. The referee found that in July, 1987, the defendant wilfully committed an anticipatory breach of the contract, informing the plaintiff that he would not sell him the house at the contract price. Between the contractual date of performance and the defendant's repudiation, the parties communicated with each other on a regular basis concerning the progress of the ongoing construction, and assumed and acted as though the contract was still in effect. The referee also found that in late July, 1987,[3] the plaintiff made a written demand for performance, stating that he was ready, willing and able to purchase the property. The plaintiff had discussed a mortgage application with a mortgage broker and was confident of securing a mortgage, but never formally applied for one. The house was not sufficiently complete for a mortgage appraisal until July, 1987.

The referee concluded that the plaintiff was not entitled to specific performance because he never received a mortgage commitment. The referee also concluded that, after the defendant's anticipatory breach,

---

[3] The referee's corrected finding indicates this date as "late *January, 1987.*" (Emphasis added.) It is clear, however, from the context of the corrected finding, that this was a clerical error, and that the referee meant late July, 1987.

the plaintiff was excused from any obligation to apply for a mortgage or to accumulate the exact amount of cash required to close. The referee awarded the plaintiff damages in the amount of $30,500, plus interest, for the defendant's breach of contract.

The court accepted the referee's report and rendered judgment accordingly. This appeal followed.

## I

The defendant first claims that the court erred in concluding that he had anticipatorily breached the contract. He argues that once the March 27, 1987 contractual performance date passed, there was no contract for him to breach because the parties did not intend to modify the contract by extending the time for performance. This argument is based on the contentions that the referee did not explicitly find that the parties had modified the contract, that there was no oral or written agreement to modify the contract, and that the contract specifically required that modifications be in writing. We disagree.

An anticipatory breach of contract occurs when the breaching party repudiates his duty before the time for performance has arrived. *Martin* v. *Kavanewsky,* 157 Conn. 514, 518–19, 255 A.2d 619 (1969); *Koski* v. *Eyles,* 37 Conn. Sup. 861, 862, 440 A.2d 317 (1981). Its effect is to allow the nonbreaching party to discharge his remaining duties of performance, and to initiate an action without having to await the time for performance. *Martin* v. *Kavanewsky,* supra. Furthermore, contract modification is a question of fact; *Three S. Development Co.* v. *Santore,* 193 Conn. 174, 177–78, 474 A.2d 795 (1984); and may be effectuated expressly by mutual promises; id., 178; or may be implied in fact from the parties' conduct. Cf. *Rahmati* v. *Mehri,* 188 Conn. 583, 587, 452 A.2d 638 (1982) (manifestation of mutual assent may be found by the conduct of the parties).

In this case, the time for performance stated in the contract was March 27, 1987. The referee found that the defendant committed an anticipatory breach of the contract in July, 1987. The referee also found that the parties were in regular communication about the progress of the house through July, 1987, and that until the defendant repudiated the contract in July, 1987, they assumed and conducted themselves as if the contract was still in effect. Implicit in these findings is the finding that the contract was modified to extend the time for performance to October, 1987, when the defendant completed construction of the house and obtained a certificate of occupancy. This implied finding, together with the explicit finding that the defendant wilfully repudiated the contract in July, 1987, render the doctrine of anticipatory breach applicable to this case.

Because the conduct of the parties was sufficient to establish a modification of the contract extending its performance date, the fact that there was no explicit agreement to extend the time for performance is of no import. Further, we reject the defendant's claim that there could be no modification because the contract specifically provided for modifications to be in writing. It is well settled that despite the presence of such a clause in a contract, a modification by subsequent parol agreement will be given effect. *Blakeslee* v. *Water Commissioners*, 121 Conn. 163, 182–83, 183 A. 887 (1936). We see no reason why this principle should not also apply to a modification implied in fact from the conduct of the parties.

The defendant, relying on *Grenier* v. *Compratt Construction Co.*, 189 Conn. 144, 454 A.2d 1289 (1983), *Kakalik* v. *Bernardo,* 184 Conn. 386, 439 A.2d 1016 (1981), and *Mihalyak* v. *Mihalyak,* 11 Conn. App. 610, 529 A.2d 213 (1987), also claims that the four month

span between March and July, 1987, was unreasonable in this case. This line of cases involves the reasonableness of the time for performance beyond the contractual date when the contract has not been modified and time is not of the essence. When, as in this case, there is a modification, the reasonableness for the time of performance in the absence of such a modification is irrelevant.

## II

The defendant next claims that because the court found that the plaintiff was not ready, willing and able to perform, it erred in awarding damages. He contends that an award of damages was inconsistent with certain of the referee's findings, namely, that the plaintiff had insufficient funds to close on the property because he had accumulated only $24,000 and not the $27,725 required to close under the contract, and that the plaintiff never secured a mortgage commitment. The defendant argues that these facts precluded an award of damages. We disagree.

It is axiomatic that, in order to obtain specific performance, a buyer must prove that he was ready, willing and able to purchase the property. *DiBella* v. *Widlitz,* 207 Conn. 194, 199–200, 541 A.2d 91 (1988); *Romaniello* v. *Pensiero,* 21 Conn. App. 57, 60, 571 A.2d 145 (1990). It has also long been accepted that an anticipatory breach discharges any remaining duties of the nonbreaching party, and once there has been a repudiation that party is no longer required to hold himself ready, willing and able to perform. See *Martin* v. *Kavanewsky,* supra. To recover damages based on an anticipatory breach, however, the injured party need not establish that he was ready, willing and able to perform on the date for performance; he need show only that he would have been ready, willing and able to perform had there been no repudiation. E. Farnsworth,

Contracts (1982) § 8.22, pp. 637–38; J. Calamari & J. Perillo, Contracts (2d Ed.) § 12-10, pp. 467–68; see *Gilman* v. *Pederson,* 182 Conn. 582, 584, 438 A.2d 780 (1981) (repudiation is actionable only in absence of breach or repudiation by other contracting party).

In this case, therefore, the facts that the plaintiff did not accumulate all of the funds necessary for the final payment at the closing and did not secure a mortgage commitment, did not preclude an award of damages. The referee found that by the spring of 1987, the plaintiff had accumulated all but $3725 of the amount of cash required to close, and that in July, 1987, the plaintiff demanded performance of the contract, stating that he was ready, willing and able to purchase the house and lot. The referee also found that, although the plaintiff had not formally applied for a mortgage, he had discussions with a mortgage broker and was confident that he could secure one. There was also evidence that before the plaintiff could obtain a mortgage, the house had to be sufficiently complete for an appraisal, and the referee found that prior to July, 1987, it was not completed to that extent. It is implicit in these findings that the plaintiff would have been ready, willing and able to purchase the property but for the defendant's repudiation.

### III

The defendant's last claim involves the amount of damages awarded. He argues that the court erroneously computed the amount of the plaintiff's expectancy interest in using the value of the property as of October, 1987. He contends that the proper measure of damages was the value of the house on March 27, 1987, the date of performance specified in the contract, in which case the plaintiff would be entitled only to nominal damages. He argues in the alternative that if there was an anticipatory breach, the appropriate mea-

sure of damages is the value of the house in July, 1987, because that was when the defendant's breach took place. Because we have already concluded that the doctrine of anticipatory breach is appropriate in this case, we need address only the defendant's alternative claim that damages should have been measured at the time of the anticipatory breach. We disagree and conclude that, under the circumstances of this case involving an anticipatory breach of a real estate contract, the measurement of the plaintiff's expectancy interest was appropriately measured at the time of performance.

The damages in a contract action should place the injured party in the same position that he would have been in had the contract been fully performed. *Williams* v. *Breyer,* 21 Conn. App. 380, 384, 573 A.2d 765 (1990). To achieve this in a case of breach by nonperformance, the injured party should be awarded the difference between the contract price and the value of the consideration to which he is contractually entitled, as measured at the time of breach. See *Loda* v. *H. K. Sargeant & Associates, Inc.,* 188 Conn. 69, 82, 448 A.2d 812 (1982). In such a case, the time of the breach and the time of performance ordinarily coincide. See, e.g., *Williams* v. *Breyer,* supra, 381–82 (defendant breached when the time for performance as called for in the contract had lapsed).

In the case of anticipatory breach, however, the inquiry more appropriately focuses on the date of performance contemplated by the contract, rather than on the earlier date of anticipatory breach. To do otherwise would be inconsistent with the general principle governing contract remedies, namely, protecting the injured party's expectation interest by putting him in as good a position as he would have been in had the contract been performed. *Loda* v. *H. K. Sargeant & Associates, Inc.,* supra, 81. That principle involves measuring damages based on the value of the prom-

ised performance on the date that performance is to be rendered, and that measurement is no different for an anticipatory breach. A. Corbin, Contracts (1964) § 1053, pp. 311–12. "A promise is not treated as a promise to perform at the date of repudiation merely because a repudiation that takes place before the time agreed upon for performance is treated as a present breach of contract." Id., 313.

Furthermore, the defendant's proposal would encourage breaches. If the date of repudiation were used to measure damages, a seller of real estate would be induced to commit an anticipatory breach whenever he is contractually obligated to convey real property in a rising market, so that he, rather than the buyer, would reap the incremental appreciation accruing from the time of the repudiation to the time of promised performance. To prevent this scenario, the date of performance must govern.

In this case, the defendant would have performed under the contract when he delivered a completed house with a certificate of occupancy. Had the defendant not repudiated the contract, performance would have taken place in October, 1987, when the value of the house was $170,000. The trial court's damage award was $30,500, exclusive of interest. This was comprised of two parts. First, the plaintiff was awarded his expectation interest of $15,500, which was the difference between the actual value of the contract had it been performed, namely, $170,000, and the contract price of $154,500. Second, the plaintiff was awarded his restitution interest of $15,000, which was the return of his deposit. See footnote 2, supra. We see nothing improper about this measure of damages.

There is no error.

In this opinion the other judges concurred.