[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiffs, Michael Steiner and M.I.F. Associates Limited Partnership, claim that the defendants, Bran Park Associates and its general partners, George Jaser, Norman Brander, Irving Rohinsky, and James M. Rosa, breached a contract to sell to the plaintiffs the former site of the Malleable Iron Fittings factory in Branford. As remedies, the plaintiff seek specific performance, damages, and restitution. By order of the court (Celotto, J.), trial was bifurcated such that the issue of specific performance was tried first. The court (Dunnell, J.) found that the plaintiffs had failed to prove that they were ready, willing, and financially able to complete the purchase on or at a date reasonably close to the time of the scheduled closing, and that they were therefore not entitled to the equitable remedy of specific performance of the contract. The plaintiffs filed an appeal, and the Connecticut Supreme Court affirmed the judgment denying specific performance and remanding the case "for further proceedings on the remaining issues."
The remaining issues are: 1) whether the defendants are liable for a breach of their contract to sell the real property at issue, and, if so, the damages proven to have resulted from such breach; and 2) whether the plaintiffs are entitled to restitution for payments made to the defendants.
The court finds the facts to be as follows. In February 1984 plaintiff Michael Steiner and the defendants executed a sales agreement for the parcel of property in Branford. The agreement provided that the closing would take place on August 14, 1986, but that Steiner's failure to make certain payments required prior to that date would terminate the agreement. The original agreement provided that the advance payments would be credited toward the purchase price.
The parties amended the agreement in February 1986. The CT Page 4479 amendment increased the purchase price, required additional advance payments, which would not be credited toward the purchase price, and designated the closing date as "no later than August 27, 1986."
M.I.F. Associates Limited Partnership became the successor in interest to Steiner's rights in the contract. Steiner is the sole shareholder and president of M.I.F. Enterprises, Inc., the general partner of M.I.F. Associates Limited Partnership.
During the summer of 1986, the plaintiffs were working to secure financing from potential joint venturers or partners to enable them to pay the $3,800,000 purchase price at the closing.
In mid-August, Steiner met with defendant Norman Brander and told him that the plaintiffs were completing their preparations for the closing but would not be able to close on the precise date of August 27, 1986. Steiner told Brander that the closing could take place within a matter of weeks after that date. Brander responded that if the closing occurred after August 27 the buyers would have to pay an additional $25,000. Defendant Jaser sent a letter to one of the potential joint venturers (Exhibit 4) stating that the buyer must close no later than August 27, 1986 or forfeit what Jaser characterized as their "option." The defendants have stipulated that the seller refused to close at any time after August 27 on the same terms as applied on that date.
Without withdrawing their requirement that the buyers pay an additional $25,000 over the contract price if a closing was to occur after August 27, the defendants demanded of Steiner's counsel on September 12, 1986 that releases be furnished because the buyers had not indicated that they could close up to that time.
Breach of Contract/Damages
Beginning in mid-August 1986 and at all times thereafter, the defendants took the position that time was of the essence of the amended contract, and that the closing could not take place on the terms set forth in the contract at any time after August 27, 1986.
This court finds that time was not of the essence of the contract and that the sellers were obligated to close on the same CT Page 4480 terms within a reasonable time of August 27, 1986. Since they have stipulated that they refused to do so, their refusal, as the Connecticut Supreme Court noted in Steiner v. Bran Park Associates, 216 Conn. 419, 423 n4 (1990), constitutes a breach of the contract "absent some legal excuse."
The defendants assert that they had a legal excuse for not extending the time for closing for a reasonable period after August 27. Their claim is that their failure to perform is excused because the plaintiffs were already in breach for two reasons: 1) the plaintiffs, through counsel, had on August 26 indicated that they would not close unless the defendants provided evidence of compliance with certain environmental regulations not specifically incorporated as conditions in the contract, and 2) the plaintiffs lacked the funds necessary to close either on or within a reasonable time period after August 27, 1986.
In real estate contracts, the fact that a specified time is fixed for payment or for conveyance does not make "time of the essence" — at least, it does not make performance at the specified time of the essence. Kahalik v. Bernardo, 184 Conn. 386, 392
(1981.) Failure to pay at that time is not per se sufficient to terminate the seller's duty to convey; and failure to convey on the exact date does not per se discharge the buyer. Id.; 3A Corbin, Contracts 716, p. 365 (1960). See Ravitch v. Stollman Poultry Farms, Inc., 165 Conn. 135, 148 (1973); Kasten Construction Co. v. Maple Ridge Construction Co., 245 Md. 373,377, 226 A.2d 341 (1967); 6 Williston, Contracts (3d Ed. 1963) 852.
Time was not of the essence of the contract, and the buyers were therefore entitled to an opportunity to close within a reasonable time after August 27. Mihalayak v. Mihalayak,11 Conn. App. 610, 616 (1987). The sellers' refusal to agree to close on the same terms within a reasonable time after August 27 was a repudiation of their contractual obligation. However, the court finds that the buyers' notification to the sellers that they could not close either on August 27 or shortly thereafter, and the circumstances surrounding that notification, are properly characterized by the sellers as a repudiation of the contract that preceded their own repudiation. Only a party who has not himself repudiated or defaulted on a contract has a right to claim that the other party's manifestation of an intention not to perform constitutes a breach of contract. Gilman v. Pedersen, CT Page 4481182 Conn. 582, 584 (1981); Trowbridge v. Jefferson Auto Co.,92 Conn. 569 (1918).
The Supreme Court has indicated in Gilman v. Pedersen that where both a buyer and seller suspect that the other will not perform on the closing date, the court should determine whether the party claiming repudiation had a reasonable prospect of performing if the date for performance had in fact been extended for a reasonable time. In Gilman, a buyer who had twice extended the date for completion of a house repudiated the purchase six days before the rescheduled closing date. The seller claimed that this repudiation precluded the buyer's recovery of damages. The Supreme Court noted that since the buyer had sufficient reason to doubt that the defects could be remedied by the date of the contemplated closing or within a reasonable time thereafter, her repudiation of the purchase did not deprive her of a cause of action for damages.
Where damages, rather than specific performance, is the remedy sought, "the injured party need not establish that he was ready, willing, and able to perform on the date of performance; he need only show that he would have been ready, willing, and able to perform had there been no repudiation." McKenna v. Woods, 21 Conn. App. 528, 534 (1990), citing E. Farnsworth, Contracts (1982) 8.22, pp. 637-38; J. Calamari J. Perillo, Contracts (2d Ed.) 12-10, pp. 467-68.
In the case before the court, the issue is whether the buyers had issued the first repudiation by demanding a new closing date. The sellers had extended the closing date to several different potential dates to accommodate the buyers' efforts to secure funding. They were aware of the buyers' protracted efforts to attract joint venturers, and when Steiner indicated an expected inability to close on August 27, he did not represent that a matter of a mere few days delay was requested. On cross-examination, Steiner testified that he told defendant Brander that the buyers needed "a couple of weeks more" and that he had not managed to finalize his anticipated joint venture agreement with some collaborators he had been courting over an extended period. Indeed, he was not even able to indicate what entity should be identified as grantee at the closing. Under the circumstances, the court finds that the sellers reasonably concluded that the buyers would not have the ability to perform within a reasonable time after the scheduled closing date, and that their refusal to extend the time for performance without CT Page 4482 negotiating a further payment was justified by the plaintiffs' repudiation of the contract by statements that indicated that the buyers were repudiating their duty to close within a reasonable period after August 27.
The plaintiffs argue that because the transaction had been in progress for a long period and because they had spent considerable amounts of money marketing the project for potential investors, the defendants had an obligation to extend the performance date as requested.
The history of the transactions between the parties defeats such an interpretation. When the initial contract was amended in February 27, 1986, it provided that the buyers must pay $50,000 in order to extend the closing date from February to August 27, 1986, and that if the closing did not take place by April 2, 1986, an additional $50,000 was to be paid, and that an extension from May 27 to August 27, 1986 would require that an additional $35,000 be paid.
In essence, the amendment required the buyers to compensate the sellers for the time during which the large, partially tenanted property was being kept off the market. When the buyers were unable to come up with the purchase price on the date or within a few days of the date to which all the extensions led, there is no reason to conclude that the sellers had any obligation to provide a free extension for the vague and indefinite period sought by the buyers. Michael Steiner did not testify that he ever offered to complete the purchase within the few days that could be considered a "reasonable" time after the designated closing date, and the plaintiffs' conduct constituted a repudiation of the contract and a proposal to enter into a new agreement by which the purchase date would change but all other conditions, including the purchase price, would remain the same.
While the plaintiffs accuse the defendants of the first breach based on failure to provide evidence of compliance with certain environmental statutes and failure to draft certain documents, the court finds that the buyers' last-minute objections were merely delaying tactics to cover the underlying problem that they had been unable to sign on the investors they needed to be able to pay for the property.
The court finds that the first breach of the contract was by the plaintiffs, when they notified the defendants that they could CT Page 4483 not pay the purchase price on August 27 or within what the court considers to be a reasonable period of time thereafter. A repudiation or anticipated breach by one party of his contract obligation excuses the other party from further performance. Martin v. Kavanewsky, 157 Conn. 514, 519 (19699); McKenna v. Woods, 21 Conn. App. 528, 532 (1990). See also Gilman v. Pedersen supra, at 584. The sellers had no duty to prepare for a closing within a few days of August 27 when they had been told that the buyers could not close during that period.
The court concludes that the plaintiffs' anticipatory breach relieved the sellers of the obligation on which the plaintiffs' claims for damages are based, and that the plaintiffs are not entitled to damages for breach of contract.
Restitution
The plaintiffs argue that whether or not they succeed on their claim for damages, they are entitled to restitution of the payments made to the defendants pursuant to the real estate contract. Since the plaintiffs argue that the defendants were in breach, they have argued the applicability of 373 of the Restatement (Second) of Contracts, which provides that when the other party is in breach or has repudiated the contract, the non-breaching party is entitled to restitution for any benefit that he has conferred on the other party by way of past performance or reliance.
Having found that it was the plaintiffs who repudiated or anticipatorily breached the contract, the court must instead determine whether restitution is available pursuant to 374 of the Restatement (Second) of Contracts. That section provides that "if a party justifiably reuses to perform on the ground that his remaining duties of performance have been discharged by the other party's breach, the party in breach is entitled to restitution for any benefit that he has conferred by way of past performance or reliance in excess of the loss that he has caused by his own breach" subject to the provision of subsection (2) of 374, which provides as follows:
 (2) To the extent that, under the manifested assent of the parties, a party's performance is to be retained in the case of breach, that party is not entitled to restitution if the value of the performance as liquidated damages is reasonable in CT Page 4484 the light of the anticipated or actual loss caused by the breach and the difficulties of proof of loss.
The plaintiffs seek restitution for three categories of expenditures: 1) the $385,000 in deposits paid to the defendants from 1984 to 1986; and either 2) the cost of procuring a zone change in aid of their efforts to attract investors for their intended development of the land, or 3) the increased value that they contend their achievement of rezoning achieved.
The initial contract provided for an initial deposit in the amount of $50,000 and initial deposits totaling $150,000 to be paid at various times before August 31, 1985. The initial contract also provided for a $100,000 payment by February 14, 1985, which was explicitly "not a credit toward the purchase price." By the terms of the contract, however, it appears that the $100,000 payment of February 1986 was payment not as a deposit but to "entitle the purchasers to extend the said closing date of February 14, 1986 for an additional 180 days, to the date of August 14, 1986." (Ex. A, p. 2).
The initial contract provided, at paragraph 3(g), that the four $50,000 payments would be applied against the purchase price in the event of a closing, but that in the event that the purchasers exercised their cancellation option, the seller was to retain not only the four $50,000 payments but also the $100,000 paid to extend the closing date. The contract made no express provision for the allocation of the $300,000 in deposits in the event of breach by the purchaser.
When the parties amended the contract in January 1986, the amendments included the following:
 5. All monies paid to Bran Park Associates to this date are nonrefundable, and all monies paid are waived by Michael Steiner under any and all circumstances. (Ex. B)
 9. Michael Steiner hereby waives his $200,000 deposit, representing all deposits paid BranPark Associates heretofore, and shall receive no credit toward the purchase price. (Ex. B)
Paragraph 14 of the amendment (Ex. B, p. 2) provided that the sums paid to extend the closing for various reasons would not CT Page 4485 be applied to the purchase price.
Having agreed that the sums paid would not be a credit and would not be refunded, the plaintiffs can hardly expect to achieve a different and more favorable result after they have been found to have breached the contract. Section 374(2) Restatement (Second) Contracts, set forth above, counsels against such a result.
The plaintiffs' reliance on Montanaro Bros. Builders, Inc. v. Snow, 180 Conn. 481 (1983) is misplaced. That case involved restitution under an unenforceable contract, not, as here, a situation in which the buyer was in breach.
The plaintiffs also seek restitution for either the costs to them or the benefit to the defendants of the obtaining of a change of zone that will permit the subject property to be used as a mixed-use marina/residential complex. Before this zone change, the property was zoned only for industrial and commercial use.
Nothing in the contracts required the plaintiffs to obtain this zone change. Rather, the sellers, in paragraph 16 of the initial contact, granted the buyers the right to apply for permits, variances, approvals, and applications in the name of and as agent for the sellers but in no way required the buyers to do so.
The doctrine of unjust enrichment applies "whenever justice requires compensation to be given for property or services rendered under a contract and no remedy is available by an action in the contract. Providence Electric Co. v. Sutton Place, Inc.,161 Conn. 242, 246 (1971), citing 5 Williston, Contracts (Rev. Ed.) 1479. A right of recovery under the doctrine of unjust enrichment is essentially equitable, its basis being that in a given situation it is contrary to equity and good conscience for one to retain a benefit which has come to him at the expense of another. Cecio Bros., Inc. v. Greenwich, 156 Conn. 561, 564
(1968). See also Montanaro Bros. Builders, Inc. v. Snow, supra,190 Conn. at 489. In deciding such an equitable issue, the court must consider whether it is equitable to impose on the party receiving the alleged benefit the cost of that benefit when it has had no opportunity to save itself from expense or achieve the benefit by more economical means. Cecio Bros., Inc. at 568. CT Page 4486
Though, having been found to have breached the contract, the plaintiff cannot enforce it, the provisions of the contract on the subject at issue can provide some guidance to the court in determining what is just and conscionable under the circumstances. In paragraph 9 of the initial agreement, the sellers agreed that if they were unable to convey clear title as scheduled, the purchasers would be entitled to reimbursement for the expenses of obtaining variances, applications, and government approvals. This contract provision recognized that it would be inequitable for the sellers to have the benefit of such efforts if the sale did not take place.
The plaintiffs have presented evidence as to expenses for videotaped presentations, models, aerial photography, legal fees, and site plans that were used not only for the presentation to the Branford planning and zoning authority but also as an enticement to potential joint venturers. The court finds that only the following expenses were proven to be reasonably related to the application for the change in zoning designation:
 Legal fees (Attorney Sullivan) $ 4,500 Architectural fees for site plan 13,000 Photography of site 1,000 ------- Total $18,500
The change of zoning designation was clearly a benefit. It will enable the defendants to market the property for a greater variety of uses than was possible under the zoning designation existing before the plaintiffs' efforts, and it saved the defendants the cost and effort of making such an application themselves.
The court does not, however, accept the plaintiffs' view that the measure of the benefit conferred is the listing price put on the property by the defendants after they regarded the transaction with the plaintiffs as terminated. No sale of the property was shown to have resulted up to the time of trial, and the plaintiffs presented no probative evidence to establish that the change of zoning had increased the fair market value of the property in any specific amount.
Accordingly, while the court finds that the defendants must reimburse the plaintiffs in the amount of $18,500 to prevent unjust enrichment, the court finds that no further compensation CT Page 4487 is due the plaintiffs.
Judgment shall enter in favor of the plaintiffs as to the third count of the amended complaint in the amount of $18,500. Judgment shall enter in favor of the defendants as to all other counts of the complaint.
The plaintiffs shall recover their statutory court costs.
Beverly J. Hodgson Judge of the Superior Court