[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This case claims damages for an anticipatory breach of contract or repudiation of a contract for the sale of real estate.
The defendants (the DeLorenzos) are an elderly couple who engaged Gwen Smith (Smith), to sell their home at 81 Park Road, Hamden, Connecticut. On a form of Smith's employer, Press/Cuozza, a contract (Exhibit A) was executed wherein her principals (the DeLoranzos) as sellers agreed to sell their real estate to the plaintiff Elizabeth Marinelli (Marinelli) who then lived in New Britain for the purchase price of $100,000.00. The contract provided for a closing date of July 31, 1993.
The contract (Exh. A) under paragraph 8 provided that the Buyer shall make a physical inspection as follows:
 Paragraph 8(a) 7 days after the signing of the contract (b) notification period after inspection period 3 days.
 Then if after (8(a) and 8(b) was completed item # I on the reverse side is automatically made part of this Agreement.)[1]
The defendants argue that the contract was never fully in force. Even though the plaintiff got an extension of her financing contingency until July 19, 1993 the defendants contend that the plaintiff did not have a signed satisfactory termite inspection on an acceptable form which was a condition precedent to an unconditional mortgage commitment as provided for in the contract.
It was the responsibility of the plaintiff for mortgage approval to have an inspection report that the premises are free of termites. This condition was one placed upon the plaintiff by the lender. Also it was customary that the inspection would be made and other repairs made by the defendants.
The defendant made other repairs to the dwelling demonstrating that they were intending to deliver title to the property. However, a dispute arose with respect to the termite inspection a condition that had to be fulfilled by the plaintiff as a condition for the mortgage.
Smith testified that in order to obtain an FHA mortgage a CT Page 8048 termite inspection is standard.
The condition as to financing is contained in paragraph 6 of the contract which provides as follows:
6. THIRD PARTY FINANCING CONTINGENCY:
 a. Amount: $96,000.00 b. Initial Interest Rate: 7.5% per annum F.H.A. c. Term: 30 Years d. Time limit for commitment: 30 days
 (If 6a, 6b, and 6d are completed, item #G on the reverse side is automatically a part of this Agreement.)[2]
The defendants argue that the Plaintiff did not have a commitment as provided for in the contract and therefore the contract was never fully in force. The plaintiffs argue that upon an anticipatory breach of contract the injured party need not show that she was that upon an anticipatory breach of contract the injured party need not show that she was ready willing and able to perform if the defendant had not repudiated the contract.Mckenna v. Woods, 21 Conn. App. 528. 532 544 A.2d 836 (1990). The plaintiff asserts that she had a valid and timely mortgage commitment (Exh D) and that the only outstanding condition requiring satisfaction prior to closing set for July 31, 1993 was receipt of a satisfactory termite inspection signed before the closing. The plaintiff argues that she was ready willing and able to close had the defendants repaired the termite damage as agreed but for the repudiation by the defendants. McKenna v. Woods,Supra.
Joseph Giamo made three termite inspections of the premises where termite infestation was noted in the side of the garage. On the first inspection (Exh G) dated July 9, 1993, the area was described as 4X4 along right side of garage. As a further note it stated "OWNER has agreed to treat detached garage for termites."
On July 16, 1993, Crest Termite Control Inc., Joseph Giamo President, provided a report on (Exh F) noting Paragraph 8 "Based on careful visual inspection" 8C. Visible evidence of infestation was noted; proper control measures performed. "8D Visible damage due to termites) and items under paragraph 10 "Detached Garage treated by this Co. on July 13, 1993 for control of termites with Dragnet Termiticide. Job is warranted against reinfestation of CT Page 8049 termite for two (2) years."
Giamo testified they did not repair it but just treated it. Giamo stated that the owner, Aniello DeLorenzo said that was all he was going to do about the sill. Tar had sign off the garage. Giamo further testified that it was customary for the owner to fix termite damage. After the dispute arose concerning the termite problem, Marinelli, the Plaintiff offered to pay to fix the termite damage but DeLorenzo, the defendants stopped communicating with the plaintiff or their agent. Gwen Smith ("Smith"), the Real Estate agent, acting on behalf of the defendants was holding the $1500 deposit required in the contract. Smith testified she informed the defendants that the plaintiff agreed to pay for the repair of the garage.
Arguments concerning the repair made by Aniello DeLorenzo was the cause in a break down of communications between the Seller and Buyer. The Seller was persistent in not communicating with the Buyer.
Elizabeth Marinelli testified that she had the mortgage commitment subject to the termite inspection. Once DeLorenzo informed the inspector they would fix the termite damage but when Crest came out again he told the defendants it was not correctly repaired Marinelli informed Smith she would fix the termite problem herself. Smith informed the defendants, but they withdrew from the Agreement and would not communicate with her further. Even after the closing date had passed Marinelli desired to close on the agreement (See Exhs. Q and R).
On July 28, 1993 Philip W. Ball, Esq. attorney for the defendant wrote to attorney Jeffrey T. Walsh, Esq. (Exh P.) that the defendants were unsure of "what was going on" and have directed him to inform you and your client, "that they are not ready to close on Friday July 31, 1993." The letter went on to state that "This is not to say that the deal was dead." Exh. P was faxed July 28, 1993 which apparently was a follow up letter (Exh. O) asking for a return of her deposit and notice of their unwillingness to convey the property.
This case is one of complete confusion concerning the sale of the real estate. The defendants were either unsure from the start whether to sell their property or confused in their responsibility to convey title. However, a sale Agreement was made which was breached by the defendants. CT Page 8050
The plaintiff was also being pressured by a requirement to move from her dwelling in New Britain and being pregnant. She had a new job in the New Haven area. The effective date for her to lease her premises in New Britain was August 1, 1993. Marinelli was ultimately able to find property to purchase in the New Haven area which closed September 17, 1993.
The court finds that the special defense is inapplicable for this breach of an Agreement to sell. Notwithstanding the defendants' argument that the contract was not fully in force, the court finds that the defendants' failure to allow the condition to be fulfilled by the purchaser for the mortgage cannot now be asserted as a defense. The court finds that the defendants breached their contract of sale when they refused to "communicate" after the termite problem arose. Failure to make the final portion of the deposit cannot be used as a failure on the part of the Seller to fully perform. (Mckenna v. Woods21 Conn. 460).
The court will now consider damages. The defendants argue that the measure of damages should be made at the time when the defendant repudiated their contract to sell. The court finds that the contract was breached on or about July 16, 1993 when the final termite inspection was made. The defendants at that time effectually repudiated their Agreement to sell when they refused to further communicate. The plaintiff is entitled to the benefit of her bargain and although it has been shown that the amount of her mortgage would effectively cover the purchase price of the real estate that is what the parties bargained for. Testimony at trial established the value of the real estate to be $107,000.00 (Branchi appraisal Exh H.). Accordingly damages are found to be $7,000.00. The court rejects the claim for other consequential damages such as for moving, storage etc from the plaintiff's former address since said amounts were likely attached to any move to a new location. All other fees such as mortgage application, physical inspection and or termite inspections are likewise disallowed because such fees were obligations attached to buyer's responsibility to purchase the property. Costs claimed for the plaintiff's future residence are likewise rejected.
On the date of the trial the defendants offered to specifically perform which was rejected by the plaintiff.
Accordingly, judgment may enter in favor of the Plaintiff for CT Page 8051 the sum of $7,000.00 plus court costs.
Frank S. Meadow Judge Trial Referee