[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
In response to this court's order of February 13 opening the judgment for the limited purpose set forth therein, the plaintiffs filed a"Memorandum in Support of the Plaintiffs Motion to Reopen Request for Exception and Objection to Acceptance of Referee's Report." The memorandum raises five issues which the court will address in turn.
1. The status of Thomas Winschel as a party to the contract. The evidence referred to does not compel a conclusion that Thomas Winschel was a party to the contract, either expressed or implied. The conclusion that Winschel was not a party to the contract was properly reached on the basis of the subordinate facts found by the attorney trial referee (hereinafter "ATR"). The finding of fact and the inferences drawn therefrom on the basis of the evidence cited by the plaintiffs were reasonably logical and were not clearly erroneous. Wilson Trucking Inc. v.Mansour Builders. Inc. 20 Conn. App. 420, 425 (1989). Moreover, the plaintiffs have failed to demonstrate how or to what extent the result would have been different had the ATR and the court (Levin, J.) found Winshel to have been a contractual party.
2. and 3. The status of the contract as written or oral, and thesignificance of the August 15 1985 closing date. The ATR found that the oral agreement between Clark and Nichols was reduced to writing on July 23, 1985. The plaintiffs attack this finding implying that the oral contract survived the written contract CT Page 8779 because Clark wished to make certain revisions as set forth in his letter to his attorney. (Plaintiff's Exhibit 3). As the plaintiffs point out, Nichols orally agreed to these changes in early August of that year. So, even if the closing date was extended from August 15 to August 31 as set forth in paragraph 3 of that letter or even to September 15 as mentioned at page 52 of the transcript of 2/23/94, the ATR's finding that Nichols anticipatorily breached is sound and amply supported by the evidence, some of which is as follows:
 At p. 67 of 2/25/94 transcript Nichols admits that he was obligated under the contract to pay $180,000 on the closing date.
 At p. 112 of 2/25/94 transcript he admits that he did not have enough money to close nor did he have the necessary approval of the New York Stock Exchange.
 At p. 40 of 2/23/94 transcript Clark testifies that Nichols told him that he did not have the money to close"and wasn't sure when he was going to he had investors who were going to contribute to the purchase price who never materialized.
 At p. 95-96 of 2/25/94 transcript Nichols admits that he didn't the money in his escrow account at the time specified for closing.
This court concludes that even if the August 15 closing date was extendable to September 15 or even later and irrespective of whether the contract was oral or written, at no time did Nichols have sufficient funds to complete the purchase. Hence, the ATR had ample evidence upon which to base her conclusion that Nichols had anticipatorily breached the contract.
4. Anticipatory Breach
The plaintiffs argue that because the Newport Office of Burgess and Leith Advest closed on August 1, 1985 it became relieved of its duty to notify Clark of the deposit of sufficient funds in escrow to close. As Judge Levin pointed out, once Nichols advised Clark that he did not know when, if it at all, he would be able to raise sufficient funds, Clark was thereafter discharged from any further obligation under paragraph 15 of the agreement (Plaintiff's Exhibit 2). McKenna v. Woods,21 Conn. App. 528 (1990).
The plaintiff's efforts to persuade the court that the ATR's CT Page 8780 findings that Nichols was financially unprepared to perform were unsupported by the evidence are unavailing. As noted above, at pages 95-96 of the 2/25/94 transcript Nichols admits that he did not have sufficient funds to perform on August 15, 1985, the contractually provided closing date. Both the defendant and the ATR had a right to disbelieve Nichol's statement in his letter of August 20, 1985 (Plaintiff's Exhibit 5) that he"was in a financial position to close and perform all contractual obligations as soon as New York Stock Exchange approval can be obtained". Likewise, they had a right to reject the statements made in plaintiff's exhibit 8 and 9 as being without credibility.
5. The Contract with Bank East.
The plaintiff's claim that the ATR erred in failing to find that the agreement with Bank East had been negotiated prior to August 13, 1995 is of no assistance to the plaintiffs as the defendant had a right to negotiate with other persons in view of the plaintiff's past history of financial independability. It is noted that the plaintiffs do not contest ATR finding #35 which states"from the very beginning of negotiations between Roger Clark and Robert J. Nichols every time there was a kind of payment due, Robert J. Nichols either missed the date or came to negotiate less money, or something similar". Moreover, the plaintiff's do not take issue with finding #39 which renders the defendant's refusal to extend the closing entirely reasonable. To put another way, it would have been reasonable to have expected the defendant to have extended the closing date pending New York Stock Exchange approval had the plaintiff had sufficient funds in his escrow account to enable him to close and had he not had such an undependable record of performance with the defendant.
MOTTOLESE, JUDGE