THREE S. DEVELOPMENT COMPANY *v.*
D. EARL SANTORE
(12041)

HEALEY, PARSKEY, SHEA, GRILLO and BIELUCH, Js.

Argued March 13—decision released May 15, 1984

*Eric N. Wellman,* for the appellant (defendant).

*Richard L. Newman,* for the appellee (plaintiff).

PARSKEY, J. The plaintiff brought the present action seeking monetary damages for a breach of contract and in connection therewith sought a prejudgment remedy by way of attachment of real estate of the defendant. From the judgment ordering the attachment the defendant has appealed.

In his appeal the defendant contends that the court erred in (1) finding probable cause that the contract in question had been extended beyond its stated termination date; (2) discounting the defendant's evidence showing that the plaintiff did not make a tender of performance; and (3) quashing the defendant's subpoena duces tecum. We find no error.

We first consider whether there was probable cause for the order of attachment. The language of our prejudgment remedy statutes; General Statutes § 52-278a et seq.; requires that the court determine "whether or not there is probable cause to sustain the validity of the plaintiff's claim"; General Statutes § 52-278d (a); that is to say "probable cause that judgment will be rendered in the matter in favor of the plaintiff." General Statutes § 52-278c (a) (2). "The legal idea of probable cause is a *bona fide* belief in the existence of the facts essential under the law for the action and such as would warrant a man of ordinary caution, prudence and judgment, under the circumstances, in entertaining it." *Wall* v. *Toomey,* 52 Conn. 35, 36 (1884). Probable cause is a flexible common sense standard. It does not demand that a belief be correct or more likely true than false. *Texas* v. *Brown,* 460 U.S 730, 103 S. Ct. 1535, 75 L. Ed. 2d 502 (1983). The hearing in probable cause for the issuance of a prejudgment remedy is not contemplated to be a full scale trial on the merits of the plaintiff's claim. The plaintiff does not have to establish that he will prevail, only that there is probable cause to sustain the validity of the claim. *Ledgebrook Condominium Assn., Inc.* v. *Lusk Corporation,* 172

Conn. 577, 584, 376 A.2d 60 (1977). The court's role in such a hearing is to determine probable success by weighing probabilities. *Michael Papa Associates* v. *Julian,* 178 Conn. 446, 447, 423 A.2d 105 (1979). In this process the trial court is vested with broad discretion which is not to be overruled in the absence of clear error. *Augeri* v. *C. F. Wooding Co.,* 173 Conn. 426, 429, 378 A.2d 538 (1977).

This court's role on review of the granting of a prejudgment remedy is very circumscribed. It is not to duplicate the trial court's weighing process, but rather to determine whether its conclusion was reasonable. "In the absence of clear error, this court should not overrule the thoughtful decision of the trial court, which has had an opportunity to assess the legal issues which may be raised and to weigh the credibility of at least some of the witnesses." Id.

The issue before the court was a limited one. It is undisputed that in March, 1974, the parties entered into a written agreement for the sale of the defendant's real property, that before the sale could be consummated the defendant seller was expected to establish and settle marketable title to his property by a quiet title action, that if the seller was able to establish such title by October 18, 1975, the closing was to take place within fifteen days from such determination, but that if the seller was unable to establish marketable title by final judgment within such time period the agreement was to be deemed void, and that the buyer exercised its right under the contract to extend the agreement for an additional twelve month period, that is, to October 18, 1976. The dispute revolved about two questions. The first was whether, as the plaintiff claimed, the contract was extended for an additional period because of a delay in the prosecution of the quiet title action and second, whether there was a tender of performance.

It is conceded that at the time of the initial agreement the defendant was represented by Attorney Robert Payne not only with respect to the contract of sale but also with respect to the quiet title action. There was evidence of communications, both oral and written, between the plaintiff's attorney and Payne with respect to further extensions of the agreement and with respect to the progress of the quiet title action and that ultimately, in September, 1980, Payne wrote to the plaintiff to advise it that the quiet title action had been resolved in the defendant's favor and that the plaintiff should proceed with its preparations for closing. The defendant does not challenge this evidence but claims that there was no evidence that Payne represented him during this period. This claim is without merit. " 'The rule . . . that when a personal relation, or state of things, is once established, the law presumes that it continues to exist until the contrary is shown, is too well settled to require discussion.' *Bennett* v. *Agricultural Ins. Co.,* 51 Conn. 504, 510 [1884] . . . ." *Nikitiuk* v. *Pishtey,* 153 Conn. 545, 552, 219 A.2d 225 (1966). In the absence of evidence to the contrary the trial court could, on the basis of this presumption, conclude that Payne was acting on behalf of the defendant in extending the time for the performance of the agreement.

Nor can the defendant prevail on his claim that there was no consideration supporting the extension of time beyond October 18, 1976, and hence the agreement to extend is unenforceable. "In order to prove that a contract has been modified, the party asserting the modification must show mutual assent to its meaning and conditions. *Lar-Rob Bus Corporation* v. *Fairfield,* 170 Conn. 397, 402, 365 A.2d 1086 (1976); *Hess* v. *Dumouchel Paper Co.,* 154 Conn. 343, 347, 225 A.2d 797 (1966)." *First Hartford Realty Corporation* v. *Ellis,* 181 Conn. 25, 33, 434 A.2d 314 (1980). Whether the

parties intended to modify their contract is a question of fact. Id; *Rowe* v. *Cormier,* 189 Conn. 371, 373, 456 A.2d 277 (1983). In finding that the parties agreed to extend the terms of the contract, the trial court relied on the plaintiff's written requests for an extension and Payne's letter of October 18, 1980, to the plaintiff suggesting that the plaintiff prepare for the closing. As previously stated, the question of Payne's authority remains an issue for the trial court, but for the purposes of our review of the propriety of the prejudgment remedy, this communication constitutes ample evidence that the contract was modified. Inherent in the trial court's conclusion was a finding that the parties exchanged mutual promises to postpone the performance of the contract. These mutual promises are sufficient consideration to support the modification. E.g., *First Hartford Realty Corporation* v. *Ellis,* supra, 33–34; *Osborne* v. *Locke Steele Chain Co.,* 153 Conn. 527, 531, 218 A.2d 526 (1966); 17 Am. Jur. 2d, Contracts § 473.

With respect to tender there was evidence that the plaintiff was ready, willing and able to conclude the transaction after being advised about the successful resolution of the quiet title action and so notified the defendant. There was also evidence that by arrangement between the plaintiff and Danbury Savings and Loan Association a check covering the purchase price of the subject property was issued by the association to its attorney as trustee. The money was to be available for use by the plaintiff to consummate the transaction. There was also evidence that the check was tendered to the defendant but it was refused. The trial court noted that there were numerous questions remaining to be resolved at the trial with respect to both the factual and legal efficacy of the purported tender but concluded that these questions did not militate

against a finding of probable cause. In light of our limited role on review of such matters we agree.

Finally, the defendant challenges the court's granting of the motions to quash the subpoenas duces tecum served upon the plaintiff and the Danbury Savings and Loan Association. The subpoenas commanded the production, inter alia, of various types of participation agreements between the plaintiff and the loan association, complete copies of IRS returns of the plaintiff covering a period of eight years, financial statements of the plaintiff and its president for an eight year period and corporation books of the plaintiff without further specification or limitation. The defendant asserts that the court erred in granting the motion without first examining the requested documents as to their relevancy. We disagree.

A subpoena is an appropriate process for the production of documents that are relevant to the matter before the court. *Hurley* v. *Connecticut Co.,* 118 Conn. 276, 284, 172 A. 86 (1934). It may not be used, however, for the purpose of conducting a fishing expedition into the papers of a party or a stranger to the proceedings. *Katz* v. *Richman,* 114 Conn. 165, 171, 158 A. 219 (1932). The subpoena should be sufficiently particularized so that the documents sought may be readily identified. The onus should not be placed on the court to inspect numerous documents for the purpose of culling out those papers which may be relevant to the matter on trial. If the subpoena on its face is *too* broad and sweeping, it is subject to a motion to quash. We agree with the trial court that the subpoenas were overly broad and therefore the defendant gains nothing from this assignment of error.

There is no error.

In this opinion the other judges concurred.