[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: APPLICATIONS FOR PREJUDGMENT REMEDY
This case comes before the court pursuant to an order to show cause relative to an application for prejudgment remedy filed on behalf of the plaintiff, Alan M. Fisher, Trustee. Such CT Page 421 application seeks an attachment in the amount of $310,000.00, and the plaintiff wishes to attach the stock of the defendant, Anthony Silano, in C.E.C., Inc. and such other property as may be disclosed by such defendant. The plaintiff also seeks to garnish C.E.C., Inc. with respect to any beneficial interest which the defendant, Silano, may have therein.
The defendant Silano, in turn, seeks a prejudgment remedy of attachment in the amount of $2,000,000.00 against Alan M. Fischer, Alan Rosen, Daniel Shepro, Jerome Goldman, Charles Willinger, John Brennan and William Brennan, all of whom said defendant claims are principals of Alan M. Fischer, Trustee, which attachment seeks to secure any recovery which the defendant, Silano, may obtain against such individuals in connection with a proposed counterclaim. The application of the defendants seek similar orders relative to C.E.C. stock and interests of such individuals therein as does the plaintiff's application and, in addition, seeks the attachments of certain real estate in which such individuals have an interest.
The plaintiff's complaint, as amended, alleges that the plaintiff and the defendant Silano entered into a contract whereby Silano was to sell to the plaintiff certain property located in Waterbury. It is alleged that said contract called for a total deposit of $240,000.00; however, the plaintiff claims to have erroneously paid a deposit in the amount of $264,000.00. The plaintiff claims that the defendant Silano has refused his request to repay the sum of $24,000.00 which he claims was paid in error.
The plaintiff also claims in the complaint as amended that the contract in question contained several conditions and/or contingencies which the defendant was unable to fulfill, including the ability of the purchaser to obtain full, final and absolute approval to tie into the city storm drains and sanitary sewers, including approval as to-"capacity." As a result of such failure, the plaintiff claims to be entitled to the return of the entire $264,000.00 deposit.
Finally, the plaintiff alleges that because of the inability of the defendant, Silano, to meet the contingencies and/or conditions, the parties entered into a subsequent agreement to terminate the contract for the sale of the property. The plaintiff claims that the defendant has breached that agreement by not making the payments agreed to therein, including the deposit in question along with certain expenses incurred by the plaintiff in connection therewith.
In his proposed counterclaim, the defendant, Silano, claims that he will seek money damages for breach of contract CT Page 422 relative to the sale of the Waterbury property. The defendant, Silano, claims that, as a result of such breach, the property is subject to foreclosure, and expenses have been incurred, all of which has resulted in damages in excess of $2,000,000.00.
"The language of our prejudgment remedy statutes; General Statutes 52-278a et seq.; requires that the court determine `whether or not there is probable cause to sustain the validity of the plaintiff's claim'; General Statutes52-278d(a); that is to say `probable cause that judgment will be rendered in the matter in favor of the plaintiff.' General Statutes 52-278c(a)(2). `The legal idea of probable cause is a bona fide belief in the existence of the facts essential under the law for the action and such as would warrant a man of ordinary caution, prudence and judgment, under the circumstances, in entertaining it.' Wall v. Toomey, 52 Conn. 35,36 (1884). Probable cause is a flexible common sense standard. It does not demand that a belief be correct or more likely true than false. Texas v. Brown, 460 U.S. 730,103 S.Ct. 1535, 75 L.Ed.2d 502 (1983). The hearing in probable cause for the issuance of a prejudgment remedy is not contemplated to be a full scale trial on the merits of the plaintiff's claim. Ledgebrook Condominium Assn., Inc. v. Lusk Corporation, 172 Conn. 577, 584, 376 A.2d 60 (1977). The court's role in such a hearing is to determine probable success by weighing probabilities. Michael Papa Associates v. Julian,178 Conn. 446, 447, 423 A.2d 105 (1979." Three S Development Co. v. Santore, 193 Conn. 174, 175-76, 474 A.2d 795 (1984).
Therefore, this court perceives its function as one of evaluating the evidence presented using a common sense approach and, by weighing probabilities, determining which party will probably be successful after a full trial on the merits.
In support of his application, the plaintiff produced an offer to purchase (exhibit 1) and the formal contract for the sale of the Waterbury property (exhibit 2). The sales price reflected in each is $2,414,000.00. The offer reflected the payment of $24,000.00 and called for an additional payment of $216,000.00 upon the execution of a formal contract for a total deposit of $240,000.00. The contract of sale calls for a deposit of $240,000.00 "payable upon the execution and delivery of this contract." Considering both documents, it appears to the court that it was the intention of the parties that the total deposit was to be $240,000.00 and not $264,000.00. Therefore, there was an overpayment of the deposit in the amount of $24,000.00 which was indeed admitted by the defendant Silano during the course of his testimony. Therefore, it is the opinion of the court that the plaintiff will likely prove to a trier of fact that there was an overpayment of the deposit in CT Page 423 the amount of $24,000.00.
A critical issue in dispute appears to be whether the conditions or contingencies in the contract were not met, or could not reasonably be met so as to result in the termination thereof, thereby entitling the plaintiff to the return of his deposit monies. Unless the plaintiff, as buyer, is relieved of his obligations under the contract, the seller, Anthony Silano, is entitled to retain any deposit monies as liquidated damages pursuant to paragraph seven thereof.
The primary condition or contingency to which the parties addressed themselves at the hearing was that contained in paragraph 16 of the contract which reads as follows:
 This contract is contingent upon the Purchaser being able to obtain final and absolute approval to tie into the City storm drains and sanitary sewers, including approval as to `capacity' and further obtaining an appropriate easement from the `cemetary' to tie in.
As per the testimony of Mr. William Brennan, a partner of the plaintiff in the purchase of the property, from the plaintiff's viewpoint, the one stopping point in the project was the drainage. According to the plaintiff, Alan Fischer, they attempted to resolve this problem along with others, and since they could not, they decided not to go through with the project.
By letter dated March 2, 1987 (exhibit 20), Alan Fischer requested that Mr. William Doll, of DeCarlo Doll, Inc., "design an effective, acceptable, economic storm water drainage system for this site." The letter from Mr. Fischer, however, makes reference to a proposed "resubdivision" in the form of cluster housing as opposed to the original subdivision which was in place at that time. This language would appear to be consistent with the testimony of Mr. James Goffin to the effect that the defendant was requested by the plaintiff, in April of 1987, to withdraw the original 71 lot subdivision so that they could apply for cluster housing. This evidence creates some doubt in the court's mind as to whether the plaintiff ever intended to develop the original 71 lot subdivision.
Mr. Doll went to the site in March or April of 1987, and his study concentrated on getting the drainage to the Naugatuck River as he felt the existing drainage system was too small. Mr. Doll's preliminary study is reflected in his letter to Alan Fischer dated April 3, 1987. (Exhibit 4.) Based upon CT Page 424 the report of Mr. Doll, it was the testimony of Mr. Fischer that they never went further with the actual design of a drainage system as they felt the deal was not viable. It was the opinion of William Brennan that the inability to tie into the existing system would require that the drainage go to the Naugatuck River, which would be prohibitive.
The defendant, on the other hand, produced evidence, through Christine Kelly, that in May of 1989 she began the process to obtain the approvals which would result in the property in question becoming a fully developed subdivision. Storm drainage approval was obtained in September of 1989. According to Mr. James Meyers, a professional engineer, he designed a storm drainage system which included a detention pond on the property and which thereafter tied into the State DOT system on Thomaston Avenue. According to Mr. Meyers, his design was approved by the city of Waterbury and the state of Connecticut.
Therefore, while the plaintiff claims that the necessary conditions and contingencies were not met, the one of critical importance being storm drainage, the defendant claims that the plaintiff did not make a reasonable effort to satisfy such contingencies and are, thus, not excused from his performance of the contract. It appears undisputed that the plaintiff never submitted a storm drainage design to the City of Waterbury for approval.
Certainly, in order for the plaintiff to claim that the storm drainage contingency or condition was not met, it must be established to the requisite degree that reasonable efforts were expended in that regard, and that despite such efforts the condition could not be satisfied, i.e., that the plaintiff could not obtain final and absolute approval to tie into the city storm drains.[1]
Based upon the above factors, the court feels that the plaintiff has not satisfied his burden of proving probable cause with respect to his claim that he is entitled to the return of his deposit plus expenses on the grounds that the defendant failed to fulfill certain contingencies in the contract.
However, the plaintiff makes the further claim, independent of that discussed above, that he and the defendant entered into a subsequent oral agreement whereby the defendant agreed to repay to the plaintiff the deposit plus the expenses claimed. In support of this claim, the plaintiff himself testified that because they could not solve the problems encountered, they decided that they could not go through with the purchase, and in June of 1987, the defendant agreed to CT Page 425 return the deposit without any conditions attached.
Anne Peterson testified that on June 19, 1987, she spoke by telephone with the defendant who told her that he had signed a release and that a check for $291,000.00 was being sent or delivered to the plaintiff by the defendant's attorney. See exhibit 19. According to Miss peterson, this conversation followed a meeting at Antonio's Restaurant, a week or so previously, at which time the defendant agreed to return the deposit. Mr. William Brennan also testified that Anthony Silano stated that he was going to return the deposit money but was being held up by a subsequent buyer.
In addition, the plaintiff has produced a letter from John J. Chiarella, Sr. dated January 30, 1988 (exhibit 3) on stationary of Silano Development in which he designates himself as "Executive Vice President." The tone of that letter is that the plaintiff and defendant have reached an agreement whereby the defendant will return the deposit and pay certain expenses incurred by the plaintiff but will not pay others. The plaintiff will also provide the defendant with his technical file and the necessary releases to enable the defendant to close with a subsequent contract purchaser on or before February 10, 1988. (See exhibits 22 and 23, releases executed by the plaintiff.)
In the opinion of the court, the evidence produced by the plaintiff would be sufficient to support a finding by the trier of fact that the parties did indeed enter into a subsequent independent oral agreement as alleged by the plaintiff.
The defendant asserts a number of defenses to this claim of the plaintiff. First, the defendant claims that the agreement in question was contingent upon a closing taking place with the Father Nadolny Good News Fund. The defendant did produce evidence that such contingency was part of the agreement, that being the testimony of the defendant Anthony Silano, John Chiarella, and James Goffin. However, the court cannot ignore the fact that Mr. Chiarella's letter of January 30, 1988 contained no mention of such contingency. It appears that a condition of that importance would not be excluded from a letter which, in essence, sets forth the terms of the agreement between the parties.
Whether the alleged agreement was subject to the contingency claimed by the defendant will, of course, be a question of fact to be determined by the trier after a trial on the merits. Based upon the evidence produced, however, it cannot be considered unlikely that the trier will decide that CT Page 426 the agreement was not subject to the contingency, but rather, that the defendant made the agreement with the expectation that he would be able to sell the property to the Father Nadolny Good News Fund, an expectation which, unfortunately, failed to materialize.
The defendant claims even if such an agreement existed, it was not supported by adequate consideration running to the defendant and is, thus, unenforceable. It must be remembered, however, that at the time of the alleged agreement, there is evidence that the parties were embroiled in a bona fide dispute as to whether certain contingencies in the original contract had been or could be satisfied, and the outcome thereof would dictate the further rights and obligations of the parties. This remains the case regardless of which party might ultimately prevail on those issues. The plaintiff, in return for the promise of the defendant, agreed to release any further rights which he had under the contract and bear the burden of certain expenses which he had incurred. In addition, the plaintiff also agreed to provide the defendant with any technical or engineering information which he claims were generated through his efforts. Thus, there does appear to be evidence from which a trier could find adequate consideration.
The defendant has made the claim that the alleged oral agreement is nothing more than an offer to settle or compromise and, thus, should not be admissible as evidence, let alone support the plaintiff's claim. However, what the plaintiff alleges, and has offered evidence to support, is more than a mere offer, but, rather, an agreement between the parties, i.e., an offer and acceptance.
Finally, the defendant points out that the original agreement did not allow for oral amendments. However, it appears that the parties may well have entered into a separate oral agreement, subsequent to the original. The law does not preclude the enforcement of such an agreement. See McKenna v. Woods, 21 Conn. App. 532 (1990).
Therefore, the court does find probable cause with respect to the claims of the plaintiff as set forth in the third count of the Second Amended Complaint dated January 16, 1990, and for that reason, the plaintiff's application for a prejudgment remedy is granted.
For the reasons set forth above, the defendant's application for prejudgment remedy with respect to his counterclaim is denied.
BRUCE W. THOMPSON, JUDGE CT Page 427