[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE MOTION TO DISSOLVE OR MODIFY GARNISHMENT #108 MOTION TO STAY PROCEEDINGS PENDING ARBITRATION #106
On October 10, 1989, the plaintiff herein obtained an ex parte order of garnishment in the amount of $15,000 against the town of Groton, as to funds allegedly due to the defendant herein.
The claim is based upon an alleged breach of a contract involving the installation by the plaintiff of acoustical tile in Fitch High School in Groton. Damages are claimed for costs of preparation and lost profit.
In a hearing on a motion to dissolve or modify a prejudgment remedy, the plaintiff has the burden of proof to establish that there is probable cause to sustain claim. See discussion in New England Land Co. v. DeMarkey, 213 Conn. 612,620.
"The legal idea of probable cause is a bona fide belief in the existence of the facts under the law for the action and such as would warrant a man of ordinary caution, prudence and judgment, under the circumstances in entertaining it." Wall v. Toomey, 52 Conn. 35, 36.
"The court's role in such a hearing is to determine probable success by weighing probabilities." Three S. Development Co. v. Santore, 193 Conn. 174, 175-176. CT Page 1999
The court held a hearing on February 21, 1991. From the evidence offered, it is reasonably probable that the following facts will be found at a full trial on the issues.
In May of 1988, the defendant, who was the general contractor for certain additions and alterations to Fitch High School in Groton, requested that the plaintiff provide a bid for certain acoustical ceiling tile work under the contract.
Under date of October 14, 1988, the plaintiff forwarded to the defendant a proposal (Ex. A) for "Section 09510 Acoustical Ceiling" for a price of $61,000. The form noted that the proposal was subject to terms and conditions on the reverse of the form. The terms and conditions included such matters as time for acceptance, method of billing, manner of work performance, insurance and a guarantee.
The proposal was signed by a vice president of the defendant as being accepted and was returned to the plaintiff with a transmittal form that noted the acceptance and the following remark: "Standard AIA sub-contractor agreement will follow." The last documents were stamped as received by the plaintiff on October 19, 1988.
On January 6, 1989, the defendant forwarded a letter to the plaintiff noting the enclosure of two copies of an AIA contract agreement, and asking that the plaintiff execute both copies without alterations, and to provide bonds for performance, and payment of labor and material as required by the contract as well as certificates of insurance in strict compliance with Article 13.1 and Attachment "A" of the contract. The letter further noted that if all requirements were satisfied, a copy would be returned after counter signature (Exhibit 3). The defendant offered Ex. 4 as a copy of the contract referred to which carries the signature of the project manager of the plaintiff. The contract is entitled "AIA Document A401 Standard Form of Agreement between Contractor and Subcontractor. 1987 Edition," and carries a date of January 6, 1989.
Article 1 of the contract reads in pertinent part, as follows:
"The Subcontract represents the entire and integrated agreement between the parties hereto and supersedes prior negotiations, representations or agreements, either written or oral." The Subcontract was defined as consisting of a set of documents including the agreement, the prime contract, and other documents and modifications.
The plaintiff offered as a witness, John Biesek, its CT Page 2000 comptroller, who testified that the plaintiff had been involved in some major building contracts. As a result, he was familiar with the insurance and bonding requirements of an AIA contract.
The plaintiff also offered as Exhibits 13 and 14 respectively a labor and material payment bond and a certificate of insurance, both dated January 11, 1989.
On January 16, 1989, the defendant wrote to the plaintiff by certified mail, confirming a telephone conversation that the defendant would not proceed with the unexecuted subcontract agreement dated January 6, 1989.
Subsequent correspondence indicated that the plaintiff deemed its bid proposal (Exhibit 1) to be a binding contract when returned by the defendant. The defendant's position was that there was never a contract entered into; citing lack of sample approval by the architect.
This action followed.
It is the contention of the plaintiff that its signed bid proposal became a contract when it was accepted by the defendant and returned, The position of the defendant is that its execution of acceptance of such bid proposal was preliminary and conditional upon negotiation and execution of a "Standard AIA Subcontract agreement" (See Exhibit 2.) Since such document was never executed by the defendant, the defendant claims no contract ever existed.
"Whether a contract exists is a question of fact for the court to determine." Randolph Construction Co. v. Kings East Corporation, 165 Conn. 269, 277.
"`A contract is not made so long as, in the contemplation of both parties thereto, something remains to be done to establish contract relations. The law does not make a contract where the parties intend none, nor does it regard an arrangement as completed which the parties thereto regard as incomplete.'" New Haven Tile Floor Covering Co. v. Roman,137 Conn. 462, 464.
In the instant matter, it is probable that, at full trial, the trier would find that there were a number of things remaining to be done. The trier could reasonably find that the return of the bid proposal of the plaintiff, signed on behalf of the defendant, was not an expression of assent to the terms thereof in a manner requested or authorized by the plaintiff. See Restatement of Contracts, 32.52. As such, it was a counteroffer, to which the plaintiff evidenced its assent by CT Page 2001 signing and returning to the plaintiff. The defendant expressly withheld its assent, to be evidenced by its countersignature, until compliance by the plaintiff had been verified (Exhibit 3).
Accordingly, the plaintiff has not met its burden that probable cause exists that the trier would find that a contract existed. See Klein v. Chatfield, 166 Conn. 76, 80, 81.
The plaintiff not having sustained its burden of proof, the defendant's motion is granted and the garnishment is dissolved.
With respect to the defendant's motion to stay, it is noted that the plaintiff caused the Subcontract Agreement to be executed. Article 6 thereof provides for arbitration of any "controversy or claim between the contractor and subcontractor related to this subcontract, or the breach thereof. . ." The claim of the plaintiff appears to be based upon anticipatory breach, or repudiation. In any event, its execution of the document indicated its intent to be bound by the provisions thereof. See Board of Education v. Frey, 174 Conn. 578, 582.
The motion to stag proceedings pending arbitration is granted.
BURNS, J.