[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This matter comes before the court as a hearing on a request for a prejudgment remedy for a real estate attachment on the property of the defendants in the amount of $7,500.00. The plaintiff seeks to secure the judgment which may be rendered on his complaint in which he seeks money damages for (1) breach of a design contract or (2) a reasonable value of his services and the unjust enrichment of the defendants.
The plaintiff is a company engaged in the business of providing architectural and design, as well as building, services for residences for residential dwellings. The president of the company, Thomas R. Tuttle, is not himself an architect but employs architects on his staff. In late summer or early fall of 1994, Mr. Tuttle met with the defendants to discuss a major addition and renovations to their home in Weston. The parties entered into a design contract dated September 13, 1994 which required the plaintiff to prepare plans showing the renovations to be made, based upon "the general guidelines and goals as represented to Re-Innovations, Ltd." by the defendants.
The contract called for a fee for providing the drawings in CT Page 10068 the amount of "8% of construction costs or $900.00, whichever is greater". There was also to be an additional fee of $95.00 per hour for consultation, additional drawings, amendments and modifications to the scope of the work after the final presentation of plans.[1] The defendants paid the plaintiff $4,000.00 at the time of signing the agreement.
Later, in the fall of 1994, the plaintiff provided the defendants with a set of plans, and on November 10, 1994 a cost analysis entitled "cost analysis-Phase 1". Throughout this period there were continuing discussions between the parties about costs and budgets, including discussions concerning potential additional work. At this point the testimony is contradictory as to the intent of the parties. The plaintiff claims that the defendants asked him to draw additional plans for a substantial amount of further renovations and additions. He did indeed prepare plans for further work, and broke down all the work into a total of (6) projects. Mr. Tuttle testified that in order to build Phase I, the parties needed to know the cost of building all phases. A new cost analysis dated January 12, 1995 was presented to the defendants showing the cost of construction of all 6 projects or phases. The total construction cost shown is $208,290.00, upon which the plaintiff bases his 8% design fee, for a total fee of $16,633.20. The defendants paid the plaintiff the sum of $6,000.00 which when added to the $4,000.00 initially paid, leaves the balance claimed by the plaintiff as a design fee of $6,633.20. The plaintiff also claims three hours of supervision services pursuant to the contract, for an additional $285.00.
For the defendants' part, they insist that they never authorized the plaintiff to take the contract beyond the production of plans for Phase 1, the cost of construction for which was, according to the January 1995 cost analysis, $129,459.60. Based on this figure the fee to which the plaintiff would be entitled at 8% would be approximately $10,000.00 which the defendants have paid the plaintiff. Dr. Fradet testified that it was the plaintiff who asked them for a "wish list" if money were no object. He never intended to build but one project, and never asked the plaintiff to draw plans beyond the initial phase. He expected only a "general sketch" of any future construction. The defendants also submitted evidence, through expert testimony, that the plans prepared by the plaintiff were deficient in that they were not sufficiently complete for bidding or construction purposes. They also filed a special defense and a counterclaim claiming violation by the plaintiff of the Home Improvement Act, breach of contract, CT Page 10069 negligence, misrepresentation and violation of CUTPA.
The circumstances under which a prejudgment remedy may be granted, after a hearing, are governed by Connecticut General Statutes § 52-278d(a).[2]
To establish probable cause under the statute, a plaintiff must show that there is probable cause that a judgment in the amount of the prejudgment remedy sought will be rendered in favor of the plaintiff.[3] The concept of probable cause involves abonafide belief in the existence of facts essential under the law for the action and such as would warrant a man of ordinary caution, prudence and judgment, under the circumstances, in entertaining it.New England Land Company. Ltd. v. DeMarkey, 213 Conn. 612, 620,569 A.2d 1098 (1990); Wall v. Toomey, 52 Conn. 35, 36 (1984).
The plaintiff contends that he has proven sufficient facts to enable the court to find probable cause that a judgment will be rendered in his favor. This the court cannot do because the evidence of the plaintiff does not sufficiently outweigh that of the defendant. The critical issue is whether or not the plaintiff was authorized, or was reasonable in the believe that he was authorized, to prepare full plans beyond the Phase 1 stage. In this shortened hearing on probable cause, which is something less than a full hearing on the merits, see Three S Development Co. v.Santore, 193 Conn. 174, 175, 474 A.2d 795 (1984), the claims of the parties on this issue could not be sufficiently evaluated to determine where the truth lay. Thus, plaintiff has failed to demonstrate probable cause that a judgment would be rendered in his favor.
For the above reason, it is unnecessary for the court to consider the issues raised by the defendants in their special defense and counterclaim. The application for prejudgment remedy is denied.
So Ordered.
Dated at Stamford, Connecticut this 25th day of September, 1995.
D'ANDREA, J.