[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISIONRE: APPLICATION FOR A PREJUDGMENT REMEDY
The plaintiff brought the present application for a prejudgment remedy as a result of his termination of employment with the defendant, Quaezar, Inc. on April 30, 1997. The defendant Quaezar is a charitable organization which provides group homes to mentally ill adults and receives its entire funding from the Connecticut Department of Mental Retardation ("DMR"). The plaintiff classifies his claims in various ways including breach of contract, breach of covenant of good faith and fair dealing, promissory estoppel, negligent misrepresentation, negligent infliction of emotional distress, a violation of General Statutes § 31-51m resulting from the plaintiff's participation in an investigation of state agencies and interference with contractual relationships. In addition to Quaezar the plaintiff is also brought suit against the defendant Zelney an unpaid volunteer, who served as Chairman of the Board of Directors of Quaezar.
Many of the plaintiff's claims are based upon the assertions that the plaintiff served as Executive Director and President of the defendant Corporation for over 20 years, received favorable reviews during that period of time, was terminated without just cause.
At the time of the termination, the plaintiff held titles of executive director and president of the corporation. As president he could be removed at any time pursuant to the by-laws. However, there is no requirement that the executive director and president must be the same individual and, at one time, the plaintiff was executive director but did not hold the office of president.
The plaintiff makes no claims that any oral statements were made to him by anyone with respect to the terms regarding the length of his employment with Quaezar or that he could be terminated only for just cause. His claims of a "just cause" contractual relationship are primary based upon the staff conduct provisions of the policy manual of defendant Quaezer. The employee code of conduct contains over three pages of specific infractions resulting in various types of discipline, for example, theft property results in the suspension or termination; wasting time while on shift results in verbal guidance and unauthorized absence results in written guidance. The policy manual provides for investigation of, procedures with respect to, employee misconduct and provides that the administration reserves the right "to impose more or less severe penalties depending on CT Page 1477 the specific details of the infraction" and further provides that the executive director may discharge an employee with or without approval of any other administrator or by the board of directors.
The plaintiff claims that the policy manual is contractual document asserting that he can be only be discharged for just cause and must be afforded the procedures contained therein. The manual, however, contains no reference to a just cause standard for termination. The policy manual was accompanied by a memorandum signed by the plaintiff which specifically states "this book does not constitute a written or implied contract of employment." There is also a document contained in the company file, exhibit L, signed by the plaintiff which states, in part "I agree that my employment may be terminated by this company at any time without liability for wages or salary except as may have been earned at the date of such termination". The same document provides that "I understand that if I am employed, Quaezar can change benefits and conditions at anytime." While the document was executed after the plaintiff had been an officer and executive director of the defendant for some period of time it does indicate some knowledge of the plaintiff as the nature of his contractual relationship. In addition, the plaintiff testified that on an application for insurance policy he made representations that Quaezer's policy manual and application for employment contained "at will" provisions of employment.
The plaintiff has produced no evidence of an express contract relating to employment or that termination could only be accomplished for "just cause". The provisions contained in the policy manual (particularly in view of the no express or implied contract language in the document which accompanied the manual), does not provide the plaintiff with a reasonable basis for asserting that he could be terminated only for "just cause".
Pursuant to traditional contract principles a rule of employment at will can be modified by agreement of the parties by virtue of an implied agreement between the parties wherein the plaintiff has "the burden of proving by a fair preponderance of the evidence that (the employer) has agreed, either by words or actions or conduct to undertake (some) form of contract commitment to him under which he cannot be terminated without just cause." Torosyan v. Boehringer Ingelheim Pharmaceutical,Inc., 234 Conn. 1, 15 (1995). The plaintiff has failed to satisfy that burden. CT Page 1478
The plaintiff also makes claims with respect to a violation of General Statutes § 31-51m which provides, in part, as follows:
 "(b) No employer shall discharge, discipline or otherwise penalize any employee because the employee, or a person acting on behalf of the employee, reports verbally or in writing, a violation, or a suspected violation of any state of federal law or regulation, nor any municipal ordinance or regulation to a public body or because an employee is requested by a public body to participate in an investigation, hearing or inquiry held by the public body or a court action."
The plaintiff testified that he has no direct evidence of a violation of that statute but believes his termination was related to a violation to that statute. The basis of the plaintiff's belief results from a conversation that he had with a state senator resulting in the plaintiff preparing a memorandum raising questions of possible wrong doing on behalf of employees of the DMR. At a time when the commissioner of DMR was visiting one of the homes operated by the Corporate defendant, the plaintiff expressed fear of retaliation by a named individual within the DMR and the commissioner stated that the particular individual would not retaliate. There was no evidence that the named individual or any individual in DMR who expressed dissatisfaction with the performance of the defendant corporation, was aware of the fact that the plaintiff had written a memorandum or had provided assistance to any governmental body with respect to the investigation of the claims raised in the memorandum. Linda Underwood, supervisor of the southwest district of the DMR testified that she was unaware of any investigation or of any information provided by the plaintiffs. She also testified she had no animosity directed toward the plaintiff individually but did testify with respect to certain deficiencies of the corporate defendant with respect to the operation of one particular home. There was no evidence presented to the court that any pressure was exerted upon Mr. Zeleny to discharge the plaintiff by any representative of the DMR or both. Ms. Underwood and Mr. Zelney denied that any such pressure was exerted. Based upon the evidence submitted to the court, there appears little likelihood that the plaintiff would be able to succeed on a claim of a violation of General Statutes § 31-51m.
The plaintiff asserts a claim for the negligence infliction of emotional distress. Such a claim arises where it is based upon CT Page 1479 unreasonable conduct by the employer in the termination process.Parsons v. United Technology Corporation, 243 Conn. 66, 88
(1997). With respect to such a claim, the plaintiff had been aware for sometime of the likelihood of his being terminated and had prepared resumes for future employment. In fact his attorney had written to the defendant Quaezer asserting monetary demands in return to a resignation. The corporate defendant was totally funded by the DMR. There were no funds in the budget to pay the plaintiff the sums demanded by his attorney. Accordingly, the corporate defendant maintained the plaintiff's salary and benefits until the end of its fiscal year in July. As far as the termination itself, Mr. Zelney and another member of the board of directors walked into the plaintiff's office and advised him that he was terminated. There was nothing unreasonable occurring during the actual notification of the termination itself. The plaintiff also asserts that he was not notified by the defendant as to how long, if at all, his benefits would be continued. While notification to the plaintiff could have been handled in other ways, it is not likely, in view of the situation as it existed at the time, that the conduct of the defendants would be considered unreasonable.
While the foregoing disposes of all claims made against the individual defendant Zelney he is further protected as to the provisions of General Statutes § 52-557m which provides as follows:
 "Any person who serves as a director, officer or trustee of a non profit organization qualified as tax-exempt organization under § 501c of the Internal Revenue Code IRC of 1986, or any subsequent corresponding internal revenue code of the United States, as from time to time amended, and who is not compensated for such services on a salary or pro rated equivalent basis, shall be immune from civil liability for damage or injury occurring on or after October 1, 1987, resulting from any act error or omission made in the exercise of such persons, policy or decision making responsibilities if such person was acting in good faith and within the scope of such persons official functions and duties, unless such damage or injury was caused by the reckless, willful and wonted misconduct of such a person."
CT Page 1480
The defendants Zelney was a non compensated director of a tax-exempt organization under the statute. It appears that the defendant Zelney was acting within the scope of his duties. There is no evidence that the individual defendant was chargeable with "reckless, willful or wonted misconduct, that is, highly unreasonable conduct, involving and extreme departure from ordinary care". Dubay v. Irish, 207 Conn. 518, 533 (1988).
Accordingly the court finds that there is no probable cause that a judgment will be rendered in favor of the plaintiff. SeeNinety C. Development Company v. Santore, 193 Conn. 174, 175
(1984). Accordingly the application for a prejudgment remedy is hereby denied.
On August 22, 1997 and again on December 29, 1997 the court issued temporary restraining orders in order to preserve the status quo incident to granting requested continuances. In view of the decision herein before set forth, the temporary restraining orders are hereby vacated.
RUSH, JUDGE