[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: APPLICATION FOR PREJUDGMENT REMEDY
On October 20, 1999, the plaintiff, Gus Efthimiou, Executor of the Estate of Eleanor C. Smith, filed an application for a prejudgment remedy (PJR), as well as a motion for disclosure of assets, seeking an attachment and/or garnishment of certain real and personal property of the defendants, Jody Roher Smith, individually and as trustee of the Westville Trust, and Vorlon Holding, LLC, a Connecticut limited liability company of which Jody Roher Smith is the sole member and manager. The defendants were duly served with the Notice of Application for Prejudgment Remedy/Claim for Hearing to Contest Application or Claim Exemption; Application for Prejudgment Remedy and Motion for Disclosure of Assets; the supporting affidavit of the plaintiff; the proposed unsigned complaint, summons, and order; and Order for Hearing, which the clerk scheduled for November 15, 1999.
The affidavit of the plaintiff attests that the primary asset of the estate of Eleanor C. Smith is a trust created on May 10, 1979, known as the H. H. and E. C. Smith Trust (the Trust) of which CT Page 1140 the exhusband of the defendant Jody Roher Smith, Richard B. Smith, is the sole remaining trustee. (Affidavit of Gus Efthimiou, October 18, 1999 [Efthimiou Affidavit], ¶¶ 3, 7.) The assets transferred to the Trust consisted of all real estate of Eleanor C. Smith and her husband, Hyman H. Smith, including substantial commercial investment properties. (Efthimiou Affidavit, ¶ 5.) Upon termination of the Trust, which termination was to occur on December 31, 2029, or on December 31, 2004, if the trustees so desired, the Trust principal and income were to be transferred to the settlors, their successors and assigns. (Efthimiou Affidavit, ¶ 6.) Further, the Trust could be amended at any time by agreement of the settlors and trustees. (Efthimiou Affidavit, ¶ 6.)
Efthimiou further attests that the defendant, Jody Smith, acting as trustee of the Westville Trust, made a series of unsecured loans to the Trust, and upon failure to repay upon demand, Jody Smith sought and obtained, uncontested by Richard B. Smith, the trustee of the Trust, a judgment against the Trust. (Efthimiou Affidavit, ¶ 11.) Thereafter, Jody Smith, acting as trustee of the Westville Trust, and Richard B. Smith, acting as trustee of the Trust, entered into a settlement agreement concerning the aforesaid judgment, whereby the Trust would be released from any liability on the judgment in exchange for the transference by quitclaim deed of two properties owned by the Trust to the defendant. Vorlon Holdings, LLC. (Efthimiou Affidavit, ¶ 11.) The proposed, unsigned complaint alleges that "Jody Smith, with the intent to wrongfully deprive the Smith Estate of its assets, aided and abetted Richard B. Smith in removing assets from the trust and bringing them within the personal control of herself and Richard B. Smith. . . ." (Proposed Complaint, ¶ 10.)
On November 4, 1999, the defendants filed a motion to dismiss the plaintiff's action for lack of subject matter jurisdiction. In their supporting memorandum of law, the defendants argue that the assets alleged to have been wrongfully removed from the Trust are not assets of the estate because Eleanor C. Smith, by virtue of a Settlement Agreement entered into by the Smith family on May 2, 1985, conveyed the entirety of her interests in the Trust to Richard and Bruce Smith, which interests now have vested fully in Richard B. Smith. Thus, the defendants maintain that the plaintiff lacks standing as executor of the estate to pursue a claim as to assets no longer a part of that estate. Offered as supporting evidence of the defendants' claims are the Trust CT Page 1141 agreement and Settlement Agreement.
The hearing on the PJR application scheduled for November 15, 1999, was continued to November 22, 1999, at the request of the plaintiff to allow him sufficient opportunity to prepare an opposition to the defendants' motion to dismiss. In his opposition memorandum, dated November 19, 1999, the plaintiff argues that the complaint alleges and he has attested that the assets in question are assets of the estate and that such facts must be taken as true for purposes of determining the motion to dismiss. The plaintiff further argues that, as the executor of the estate charged with a duty and authority to bring actions to recover assets believed to have been wrongfully diverted from the estate, he clearly has standing as the proper party to request adjudication of this matter.
As a threshold matter, the court clarifies the nature of the proceeding presently before the court. Although the defendants' motion to dismiss and supporting memoranda speak in terms of dismissing the plaintiff's "action" for lack of subject matter jurisdiction, the present proceeding before the court is the plaintiff's application for a prejudgment remedy.
"The remedy of attaching and securing a defendant's property to satisfy a judgment which the plaintiff may recover is unknown to the common law and is founded on and regulated by our statutory law." (Internal quotation marks omitted.) Lauf v. James,33 Conn. App. 223, 227, 635 A.2d 300 (1993); see also Beers v. WestportBank Trust Co., 50 Conn. App. 671, 674, 719 A.2d 58, cert. denied, 247 Conn. 940, 723 A.2d 317 (1998). "Since 1973, the authority for pretrial property attachment has been spelled out in General Statutes §§ 52-278a through 52-278n. Because the plaintiff's right to a PJR is founded and regulated by statute, the law mandates strict compliance with the authorizing statute.Ledgebrook Condominium Assn., Inc. v. Lusk Corp., 172 Conn. 577,582-83, 376 A.2d 60 (1977)." William Beazley Co. v. Business ParkAssociates, Inc., 34 Conn. App. 801, 803, 643 A.2d 1298 (1994). "The statute is interpreted strictly because the right to attach property on mesne process, before the debt or claim has been established by judgment, is an extraordinary power given by statute against common right." (Internal quotation marks omitted.) Beers v. Westport Bank and Trust Co., supra, 675.
The jurisdiction of the court to act in the context of a PJR application, therefore, is narrowly circumscribed by General CT Page 1142 Statutes §§ 52-278a through 52-278n, inclusive. Section52-278d (a) provides in pertinent part that the hearing on the prejudgment remedy application "shall be limited to a
determination of . . . whether or not there is probable cause that a judgment in the amount of the prejudgment remedy sought, or in an amount greater than the amount of the prejudgment remedy sought, taking into account any defenses, counterclaims or set-offs, will be rendered in the matter in favor of the plaintiff. . . ."(Emphasis added.) General Statutes § 52-278d
(a)(1). The section further provides that "[i]f the court, upon consideration of the facts before it and taking into account any defenses, counterclaims or set-offs, claims of exemption and claims of adequate insurance, finds that the plaintiff has shown probable cause that such a judgment will be rendered in the matter in the plaintiff's favor in the amount of the prejudgment remedy sought and finds that a prejudgment remedy securing the judgment should be granted, the prejudgment remedy applied forshall be granted as requested or as modified by the court."
(Emphasis added.) General Statutes § 52-278d (a); see alsoWilliam Beazley Co. v. Business Park Associates, Inc., supra,34 Conn. App. 803-04.
In addressing the defendant's motion to dismiss, the court faces a situation not unlike that with which the court dealt inWilliam Beazley Co. v. Business Park Associates, Inc., supra,34 Conn. App. 801. In that case, after the plaintiff filed a PJR application, but before the hearing thereon was held, the defendant brought a motion to strike the plaintiff's unsigned complaint. By agreement of the parties, the trial court, Teller,J., heard argument on the motion to strike and subsequently rendered a decision denying the motion. The PJR hearing was thereafter held. The trial court, Hurley, J., granted the PJR application, taking the position that the prior denial of the motion to strike constituted the law of the case and thus barred the court from making an independent probable cause determination.
On appeal from the granting of the PRJ application, the Appellate Court held that the ruling on the motion to strike was a nullity. Id., 806. After quoting the unequivocal language of § 52-278d (a) limiting the issues at a PJR hearing to a determination of probable cause, the court noted: "No provision is made in this statute for a motion to strike the proposed unsigned complaint. This is logical because the proposed unsigned complaint is not yet `in court' until the court, pursuant to CT Page 1143 § 52-278d (a), grants the application and until, pursuant to subsection (b), proper service of the writ, summons and complaint is made."[1] Id., 804. Although the court applauded the parties' intent to conserve judicial resources in that the granting of the motion to strike would have made further proceedings unnecessary, the court nevertheless held that "we cannot give effect to this intent because the court hadjurisdiction to make a probable cause determination only, nothingmore. The parties cannot confer jurisdiction on the court by agreement." (Emphasis added.) Id., 804-05.
The court thus presently faces a similar situation, the sole difference being that in William Beazley Co. v. Business ParkAssociates, Inc., supra, 34 Conn. App. 801, the defendant brought a motion to strike while here the defendants bring a motion to dismiss. In both cases, however, the proceeding before the court is solely a PJR application. Since the court has jurisdiction to make a probable cause determination only, nothing more; see id., 804-05; the court therefore considers the defendants' arguments concerning lack of subject matter jurisdiction, not in the context of a motion to dismiss the action, but rather in the context of whether probable cause exists that a judgment in the action in the amount of the prejudgment remedy requested will be rendered in the plaintiff's favor. See East Lyme v. Wood,54 Conn. App. 394, 398, 735 A.2d 843 (1999) (on appeal from granting of PJR application, court considered issue of lack of subject matter jurisdiction "only insofar as it relates to the probability that a judgment will be rendered against [the defendants] in the underlying action").
"[A] hearing on an application for a prejudgment attachment is not a full-scale trial on the merits of a plaintiff's claim."East Lyme v. Wood, supra, 54 Conn. App. 396-97. "[R]ather [it] concerns only whether and to what extent the plaintiff is entitled to have property of a defendant held in custody of the law pending final adjudication of the merits of the action. Tylerv. Schnabel, 34 Conn. App. 216, 220, [641] A.2d 388 (1994). There is no assurance that, when a hearing on the merits is eventually reached, the evidence will be identical to the evidence adduced at the prejudgment remedy hearing. In fact, the evidence at trial will usually be much more expansive and may include exhibits or testimony not yet available at the time of the hearing on the application or the prejudgment remedy." Bosco v. Arrowhead by theLake, Inc., 53 Conn. App. 873, 874-75, 732 A.2d 205 (1999). "`It is the trial court that must determine, in light of its CT Page 1144 assessment of the legal issues and the credibility of the witnesses, whether a plaintiff has sustained the burden of showing probable cause to sustain the validity of its claim. . . .'" Nash v. Weed Duryea Co., 236 Conn. 746, 749,674 A.2d 849 (1996), quoting Greenberg, Rhein Margolis, Inc. v.Norris-Faye Horton Enterprises, Inc., 218 Conn. 162, 166,588 A.2d 185 (1991); Micci v. Thomas, 55 Conn. App. 14, 16,___ A.2d ___ (1999).
"Civil probable cause constitutes a bona fide belief in the existence of the facts essential under the law for the action and such as would warrant a person of ordinary caution, prudence and judgment, under the circumstances, in advancing the action."Tyler v. Schnabel, 34 Conn. App. 216, 219-20, 641 A.2d 388
(1994); see also Three S. Development Co. v. Santore,193 Conn. 174, 175, 474 A.2d 795 (1984). "Probable cause has also been defined as the knowledge of facts sufficient to justify a reasonable man in the belief that he has reasonable grounds for prosecuting an action. . . . The determination as to probable cause, in civil cases, is to be reached by an application of the factual and practical considerations of everyday life on which reasonable and prudent men act." (Citations omitted.) Rzucidlo v.Newtown Realty, Inc., 30 Conn. Sup. 337, 341, 316 A.2d 514
(1974). "Probable cause is a flexible common sense standard. It does not demand that a belief be correct or more likely true than false. Texas v. Brown, 460 U.S. 730, 103 S.Ct. 1535,75 L.Ed.2d 502 (1983). . . . The plaintiff does not have to establish that he will prevail, only that there is probable cause to sustain the validity of the claim. Ledgebrook Condominium Assn., Inc. v. LuskCorporation, 172 Conn. 577, 584, 376 A.2d 60 (1977). The court's role in such a hearing is to determine probable success by weighing probabilities. Michael Papa Associates v.Julian, 178 Conn. 446, 447, 423 A.2d 105 (1979)." Three S.Development Co. v. Santore, supra, 175-76; see also Giordano v.Giordano, 39 Conn. App. 183, 206, 664 A.2d 1136 (1995); VillageLinc Corp. v. Children's Store, Inc., 31 Conn. App. 652, 657-58,626 A.2d 813 (1993). "In this process the trial court is vested with broad discretion which is not to be overruled in the absence of clear error. Augeri v. C. F. Wooding Co., 173 Conn. 426, 429,378 A.2d 538 (1977)." Three S. Development Co. v. Santore, supra, 176.
The court's determination of whether probable cause exists is based upon the rather limited evidence offered by the parties at the hearing, namely the affidavit offered by the plaintiff and CT Page 1145 the Trust agreement and Settlement Agreement offered by the defendants. The plaintiff attests that "[t]he bulk of Eleanor's estate consisted of a trust agreement which Eleanor together with her spouse, Hyman H. Smith, executed on May 10, 197[9], known as the H. H. and E. C. Smith Trust (Smith Trust)." (Efthimiou Affidavit, ¶ 3.) "Hyman and Eleanor created the Smith trust both as settlors and beneficiaries" and "appointed Richard and Bruce Smith . . . as trustees"; (id., ¶ 4); with Richard B. Smith remaining as the sole surviving trustee; (id., ¶ 7). Hyman and Eleanor "transferred all of their real estate, including substantial commercial investment properties, to the trust"; (Id., ¶ 5); and "retained for life the interest income generated by his or her assets transferred to the trust"; (id., ¶ 6). Finally, the affiant attests that the Smith Trust "was to terminate on December 31, 2029. . . . After December 31, 2004, the trustees could terminate the trust if they so desired. The trust could be amended by agreement of the settlors and trustees at any time. Upon termination, the principal and income of the trust was to be transferred to the settlors, their successors and assigns." (Id., ¶ 6.)
There is no dispute that the above provisions to which the plaintiff attests were the original provisions of the Trust. (See Defendants' Exhibit A, Smith Trust Agreement.) The defendants, however, offer the Settlement Agreement as evidence that the Trust was thereby subsequently amended, as the plaintiff attested was authorized by the Trust agreement; (see Efthimiou Affidavit, ¶ 6); to provide for complete conveyance of Eleanor C. Smith's interests in the Trust to Richard B. Smith and Bruce A. Smith, or to the survivor thereof, upon her death, and that thus, no assets remained in trust to be passed to Eleanor C. Smith's estate.
The twenty-four page Settlement Agreement provides in relevant part: "WHEREAS . . . Richard B. Smith and Bruce A. Smith as co-trustees of, and Eleanor C. Smith as sole income beneficiary of the H. H. and E. C. Smith Trust desire to amend the May 10, 1979 trust agreement in certain respects hereafter set forth . . . IT IS THEREFORE AGREED"; (Defendants' Exhibit B, Settlement Agreement, p. 2); that "[p]roviding that they survive Eleanor C. Smith, Richard B. Smith and Bruce A. Smith are hereby, each to the extent of an undivided interest of 50 percent, irrevocably made the remaindermen of The H. H. and E. C. Smith Trust"; (id., p. 6); that "in the event of the death of either Richard B. Smith or Bruce A. Smith prior to the death of Eleanor C. Smith, the survivor shall be the sole remainderman of said Trust"; (id.); CT Page 1146 that "any interest of any other successor or assign of Eleanor C. Smith is hereby eliminated"; (id.); that "[i]n the event of the death or legal incapacity or legal incompetency of either Richard B. Smith or Bruce A. Smith during the existence of the Trust, the surviving trustee shall be the sole trustee . . . of the Trust"; (id., p. 8); that "[u]pon the death of Eleanor C. Smith, [all present and prospective interests of Eleanor C. Smith in The H. H. and E. C. Smith Trust and The H. H. and E. C. Smith Trust itself] . . . shall pass to . . . Richard B. Smith and Bruce A. Smith in equal undivided shares, or to the survivor of Richard B. Smith and Bruce A. Smith"; (id.); that [t]he termination date provided in The H. H. and B. C. Smith Trust is modified as may be necessary to carry out the purposes of this Agreement so that in no event shall it terminate during the lifetime of Eleanor C. Smith, and in no event shall it extend beyond 15 years of the lifetime of Eleanor C. Smith"; (id., p. 9); and that "[t]he trustees shall have no obligation to extend the existence of the trust beyond the lifetime of Eleanor C. Smith"; (Id.)
In other words, the import of these amendments to the Trust was that, upon the death of Bruce A. Smith on July 11, 1996; (see Efthimiou Affidavit, ¶ 7); Richard B. Smith became the sole trustee as well as the sole remainderman of the Trust. Further, upon the death of Eleanor C. Smith on February 19, 1994; (see Defendants' Memorandum, p. 3); the entirety of any interest of Eleanor C. Smith in the Trust as well as the Trust itself passed completely to Richard B. Smith as sole remainderman, who was under no obligation at that point to continue the existence of the Trust. The result, it would seem, is that, as of her death, Eleanor C. Smith possessed no remaining interest in any income or principal of the Trust which would have passed to her estate.
It is significant that the plaintiff, despite opportunity to do so, offers no evidence or testimony contesting the validity or import of the Settlement Agreement to amend the Trust. See Micciv. Thomas, supra, 55 Conn. App. 17 (reversing granting of PJR application, noting failure of plaintiff to put forth evidence contradicting the evidence of defendant). Rather, the plaintiff relies on the argument that the proposed complaint alleges and he has attested that the assets in question are assets of the estate and that such facts must be taken as true for purposes of determining the defendants' motion to dismiss. The plaintiff, however, improperly imposes a standard applicable to a motion to dismiss upon the court's determination of whether to grant a PJR application. The court in William Beazley Co. v. Business ParkCT Page 1147Associates, Inc., supra, 34 Conn. App. 801, explained the irrelevancy of this standard, which similarly applies to a motion to strike, in a proceeding to determine probable cause: "For purposes of a motion to strike, all well pleaded allegations are taken as true and no evidence is received. . . . In a PJR hearing, on the other hand, nothing is taken as true and the court is charged with making its determination from the often bitterly contested testimony and other evidence submitted by both parties." (Citation omitted; emphasis added.) Id., 805. The court, therefore, in determining whether to grant a PJR application, does not take all well pleaded facts as true.
The court concludes that the Settlement Agreement demonstrates that the assets at issue in this case are not part of the deceased's estate. Therefore, the plaintiff has failed to sustain his burden of proving probable cause that a judgment in the amount of the prejudgment remedy sought will be rendered in his favor.
Accordingly, the plaintiff's application for a prejudgment remedy is denied.
SKOLNICK, J.