[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: APPLICATION FOR PREJUDGMENT REMEDY
The plaintiff, Constantino Argimon, seeks a prejudgment remedy to secure his claims against defendant debis Financial Services, Inc., ("debis") for the latter's refusal to pay incentive compensation. The defendant, in opposing the application for a prejudgment remedy, claims that it justifiably terminated the plaintiffs employment and that, at the time of termination, the plaintiff did not have a right to receive payments under the incentive pay plan. For the reasons set forth below, the court finds that the plaintiff has established probable cause to sustain the validity of a claim for $1,250,000.00.
The plaintiff was hired by debis in 1998 after having been contacted by Mr. R. Gregory Geletka who was organizing a group at debis for the purpose of making large loans ($10,000,000.00+) for the purchase of commercial real estate. The terms of the defendant's employment offer are set forth in a letter to the plaintiff which is dated February 27, 1998. (Exhibit 1) The plaintiff was offered the position of "Group Leader: Commercial Real Estate (Eastern Division)." Besides an annual salary, a sign-on bonus, and a relocation package, the employment offer included two incentive compensation plans, which the parties call the "short-term compensation plan" and the "long-term compensation plan." The plaintiff claims that debis has wrongfully failed to pay him short-term incentive compensation for the year 2001 and that it has wrongfully failed to pay long-term incentive compensation.
At the time the plaintiff was offered employment with debis, he had been in charge of real estate acquisitions for a large real estate corporation. He gave up a career at the real estate company in order to take advantage of the opportunities offered him by the defendant. His work at debis was outstanding. The commercial real estate division exceeded its goals. The plaintiff was promoted in 1999. He received, in addition to his regular salary, short-term incentive compensation for the CT Page 88 years 1998, 1999, and 2000.
The only written terms of the incentive plans are those that are set forth in the offer of employment. In a paragraph that discusses "details of your employment," debis described the short-term plan and told the plaintiff that he would be eligible for an annual bonus in accordance with the defendant's "Incentive Compensation Plan," which was "performance based" and "not guaranteed." With respect to the long-term plan, the offer letter describes a "long-term bonus opportunity." This plan allowed the plaintiff to take advances in 1998 through 2001 against a long-term bonus opportunity that would be paid in 2002 provided the plaintiffs division met certain goals. Only the plaintiff and four other persons at debis were participants in the long-term incentive plan.
At the time debis hired the plaintiff, debis was a subsidiary of Mercedes-Benz Credit Corporation. It later became part of DaimlerChrysler Capital Services. On May 3, 2001, Mr. Geletka, who was chief executive officer of DaimlerChrysler Capital Services, told the debis employees that the parent company had made a decision to seek buyers for the commercial real estate business and planned to exit the business by the end of the year. The participants in the long-term incentive plan became concerned as to what would happen to the plan. In a memorandum to Mr. Geletka dated June 7, 2001, the plaintiff discussed his concern and estimated the amounts that the participants had "earned." In response to inquiries made by Mr. Geletka, the executive officers of the parent company indicated that they would honor the long-term incentive plan and that the results for year-end 2001 would be used for determining the payouts. In October of 2001, the plaintiff provided Mr. Geletka update calculations.
On October 23, 2001, debis terminated the plaintiffs employment after it investigated a complaint made that month by the plaintiffs secretary. The complaint, as characterized by the plaintiff, "contained language in the nature of a sexual harassment complaint." debis relies on this complaint and debis's investigation of the complaint to support its position that it had cause to terminate the plaintiff. The plaintiff, on the other hand, argues that the complaint was "trumped up . . . to fire me." Clearly, the plaintiffs conduct, whether welcomed or not, was inappropriate.
Debis has refused to make incentive payments to the plaintiff "because he was not an employee in good standing at the end of 2001." (Deposition of R. Gregory Geletka, vol. I, ap. 110). In March of 2002, debis paid the remaining participants in the long-term plan. The awards varied from $320,084.00 to $2,240,592.00. debis gave the larger award to Mr. CT Page 89 Geletka. Since Mr. Geletka had previously received an advance of $835,000.00 against his award, he was paid $1,405,592.00 in March. Had debis made an award under the long-term plan to the plaintiff, the plaintiff would have received, after deducting $200,000.00 in advances, approximately $1,240,380.00. Had debis paid the plaintiff a short-term bonus, the payment would have been approximately $116,600.00 based on the terms of the plan outlined in the offer of employment.
The plaintiff asserts nine causes of actions in his complaint: (1) breach of an express agreement to pay long-term compensation, (2) breach of an implied agreement to pay long-term compensation, (3) a claim for a declaratory judgment that the defendant is obligated to pay long-term compensation, (4) breach of an implied covenant of good faith with regard to paying long-term compensation, (5) failure to pay wages in violation of General Statutes § 31-71 et seq., (6) unjust enrichment, (7) false and misleading representations that long-term incentive compensation would be based on continued employment through December 31, 2002, (8) breach of an express agreement to pay short-term incentive compensation, and (9) breach of an implied agreement to pay short-term incentive compensation. The court has considered all of these claims and finds all but the claim relating to a breach of an implied covenant of good faith to be without merit.
"The standard by which [the plaintiffs] evidence is to be tested is not the same as that which governs a trial on the merits." William M. Raveis Assoc. v. Kimball, 186 Conn. 329, 332, 441 A.2d 200 (1982). "The language of our prejudgment remedy statutes . . . requires that the court determine "whether or not there is probable cause to sustain the validity of the plaintiffs claim"; . . . that is to say "probable cause that judgment will be rendered in the matter in favor of the plaintiff." . . . "The legal idea of probable cause is a bona fide belief in the existence of the facts essential under the law for the action and such as would warrant a man of ordinary caution, prudence and judgment, under the circumstances, in entertaining it." Three S. Development Co. v. Santore,193 Conn. 174, 175, 474 A.2d 795 (1982).
The plaintiff was one of a select group of five managers that had the opportunity to receive a substantial bonus if the commercial real estate group met its long-term goals for a period that, as modified, ended on December 31, 2001. In light of the nature of the incentive opportunity that was available to the plaintiff, debis' ability to destroy that opportunity by firing the plaintiff was limited by the implied covenant of good faith. This covenant has been described as follows:
 The implied covenant of good faith and fair dealing CT Page 90 is the residual gap-filling default rule of contract law. It imposes limits upon one contracting party's ability to negatively impact the contract's value to the other contracting party. It determines when a party may no longer pursue his own self-interest but must instead engage in cooperative behavior by deferring to the other party's contractual interests.
 Because it is a gap-filling default rule, the covenant applies only when the propriety of the conduct is not resolved by the terms of the contract or by another default rule. That situation ordinarily arises (1) when the contract is silent or ambiguous about the permissibility of the conduct, or (2) when the conduct is undertaken pursuant to a grant of discretion and the scope of that discretion has not been designated. When, however, terms of the contract, whether express or derived from extrinsic sources such as usage of trade and admissible parol evidence, determine the permissibility of the conduct, no gap filler is needed and the covenant does not apply.[1]
The plaintiff has presented sufficient evidence to support his claim that the defendant failed to deal with him in good faith when it ended his opportunity to participate in the long-term incentive plan. There is a gap in the terms of the employment agreement. In the absence of the long-term incentive plan, plaintiff would have been an employee "at will" whose employment could have been terminated at any time and for any reason. The incentive plan, however, gave the plaintiff a valuable opportunity that could be ended by debis' terminating his employment before the end of the incentive period. Under the circumstances, debis was required to act in good faith and to deal fairly with the plaintiff. While the plaintiff will have the burden at trial to show that the defendant failed to act in good faith, he is not at this time required to prove that he will prevail. He need only prove that there is probable cause to sustain his claim. In view of his financial loss and the circumstances surrounding his secretary's complaint, he has established probable cause with respect to his claim for long-term incentive compensation. CT Page 91
Based on the foregoing, the court finds that the plaintiff has established probable cause for a prejudgment remedy to secure a claim for $1,250,000.00. ___________________ THIM, J.